815 So.2d 80 (2002)
Bennett GEIGER and Peggy Pendarvis, Individually and on Behalf of their Minor Daughter, Suzanne Nicole Pendarvis,
v.
STATE of Louisiana, through the DEPARTMENT OF HEALTH AND HOSPITAL and Earl K. Long Medical Center.
No. 2001-CC-2206.
Supreme Court of Louisiana.
April 12, 2002.
*81 Richard P. Ieyoub, Attorney General, Barry G. Toups, Thibodaux, for applicant.
Steven A. Adams, for respondent.
Carlton Jone, III, Larry M. Roedel, Baton Rouge, for Louisiana Patient's Compensation Fund
KIMBALL, J.
In this medical malpractice suit against the state, the state filed an exception of prescription which was overruled by the trial court. The court of appeal affirmed on the ground that prescription was interrupted by a previous and timely-filed products liability suit which alleged solidary liability between the products liability defendants and the state. In this court, the parties admit that the evidence shows that the products liability suit was not timely, and neither party advocates the correctness of the court of appeal's reasoning, thereby rendering this issue moot. For the following reasons, we find that the medical malpractice suit against the state has prescribed from the date of the act of alleged malpractice, but we remand the case to the trial court for a hearing on whether the plaintiffs' claim has prescribed from the date of discovery of the act of alleged malpractice.

FACTS AND PROCEDURAL HISTORY
The plaintiffs are the parents of a seven-month-old child who fell from an indoor swing and was treated at Earl K. Long Hospital in Baton Rouge. Individually and on behalf of their minor child, the plaintiffs filed suit on July 14, 1993 against Spalding & Evenflo Companies, Inc., Evenflo Juvenile Furniture Co., and Infanseat in products liability, and against the Department of Health and Human Resources and Earl K. Long Memorial Hospital in medical malpractice. The plaintiffs alleged that the products liability defendants and the medical malpractice defendants were liable "jointly, severally and in solido."
On August 4, 1993, the state filed exceptions of prematurity and lack of subject matter jurisdiction on the ground that the plaintiffs had not presented their complaint to a state medical review panel before filing suit, as required by La. R.S. 40:1299.39.1(B)(1)(a)(i)[1]. The trial court sustained those exceptions and dismissed the plaintiffs' medical malpractice claims against the state without prejudice on September *82 3, 1993. The products liability defendants filed a motion for summary judgment on December 8, 1994, but the record does not reveal what action was taken on that motion or what ultimately became of that suit. According to the court of appeal, the plaintiffs dismissed with prejudice their suit against the products liability defendants on September 25, 1995.
It is undisputed that the plaintiffs filed a request for a medical review panel on August 20, 1993.[2] In June of 1996, the medical review panel rendered its opinion, finding that the evidence supports a conclusion of medical malpractice. On June 26, 1996, the plaintiffs filed a second lawsuit, which was against the state alone in medical malpractice.
The state filed an exception of prescription to the 1996 suit on August 3, 1999, and the trial court held a prescription hearing in October of that year. At the hearing, the state argued that the claim had prescribed because more than one year had elapsed from the date of the act of alleged malpractice before the plaintiffs filed their panel request, and that, under LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, the filing of the 1993 suit did not interrupt the running of prescription. The plaintiffs countered that the claim had not prescribed from the date of the act of alleged malpractice because the 1993 suit did indeed interrupt prescription, that the interruption lasted until the suit was dismissed, and that the panel request was therefore timely because it had been filed before the suit was dismissed. On March 17, 2000, the trial court overruled the exception of prescription after considering the evidence and the law, but without giving specific reasons.
From this ruling, the state applied for supervisory writs, which the court of appeal denied on October 6, 2000 in a two-to-one decision. On January 5, 2001, we granted writs and remanded the matter to the court of appeal for briefing, argument, and opinion. Geiger v. State through the Dept. of Health & Hosp., 00-3073, p. 1 (La.1/5/01), 777 So.2d 1238, 1238. On remand, the court of appeal again denied writs in a two-to-one decision. Geiger v. State through the Dept. of Health & Hosp., 00-0784, p. 1 (La.App. 1 Cir. 6/22/01), 812 So.2d 669 (unpublished opinion). The majority suggested that, had the plaintiffs' first suit in 1993 been against the state alone, it would not have interrupted prescription under LeBreton. It concluded that the 1993 suit did interrupt prescription for a different reason, namely that it was a timely-filed suit which alleged that the products liability defendants and the medical malpractice defendants were solidarily liable. It held that "[a] timely products liability suit filed against these defendants operates as a valid interruption of prescription as to them and any other solidary tortfeasor." Geiger, 00-0784 at p. 3, 812 So.2d at 670. The state again sought writs, which we granted to consider the effect of LeBreton on a timely-filed products liability suit alleging solidarity with the medical malpractice defendants. Geiger v. State through the Dept. of Health & Hosp., 01-2206, p. 1 (La.11/16/01), 801 So.2d 1069.

LAW AND DISCUSSION
In 1975, the legislature responded to what it perceived as a medical malpractice crisis in Louisiana by enacting the Medical Malpractice Act. Spradlin v. Acadia-St. *83 Landry Med. Found., 98-1977, p. 6 (La.2/29/00), 758 So.2d 116, 120. The act provides limited liability and other benefits to those who become a "qualified health care provider" (QHCP). La. R.S. 40:1299.41 et seq.; see also Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law § 21-3 (1996 & supp.2001). One of the benefits available to a QHCP is a special prescriptive rule for medical malpractice claims, which is found in Title 9 of the Revised Statutes, and which states in pertinent part:
A. No action for damages for injury or death against any ... hospital duly licensed under the laws of this state,..., whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
La. R.S. 9:5628. This accrual of prescription is suspended by the plaintiffs filing of a request for a review of the claim by a medical review panel. La. R.S. 40:1299.47.[3] The suspension runs from the date of the filing of the panel request until ninety days after the plaintiff is notified by the medical review panel of the issuance of its opinion. Id.
The parties do not dispute that the act of alleged malpractice occurred on July 14, 1992.[4] Therefore, 402 days elapsed from the date of the act until the filing of the panel request on August 20, 1993, which is more than the one year that is allowed under § 5628. The filing of a panel request after the accrual of a year is ineffective to suspend prescription from the date of the act because prescription cannot be suspended after it has run. Rizer v. American Sur. & Fid. Ins. Co., 95-1200, p. 6 (La.3/8/96), 669 So.2d 387, 390-91. Therefore, a principal issue in this case is whether prescription had already accrued on July 14, 1993, or whether some *84 other event interrupted or suspended the accrual of prescription. As noted above, the court of appeal concluded that the plaintiffs filed a timely products liability suit on July 14, 1993 that interrupted prescription as to the products liability defendants and any other solidary tortfeasor, including the state. Geiger, 00-0784 at p. 3, 812 So.2d at 670.
In this court, the state contends that the court of appeal was incorrect in relying on the solidarity alleged in the "timely" products liability suit for two reasons. First, the state points out that the plaintiffs admitted to this court that the child's fall occurred on July 13, 1992, and the products liability claim therefore prescribed on July 13, 1993, rendering untimely the products liability suit filed on July 14, 1993. Second, the state argues that solidarity between the products liability defendants and the medical malpractice defendants was never established in the 1993 suit, and cannot now be established because that suit was dismissed in its entirety. In response, the plaintiffs admit the evidence shows that the products liability suit was not timely, but they maintain that that is of no moment because they are not arguing that prescription was interrupted by a timely-filed products liability suit alleging solidarity with the medical malpractice defendants. In fact, plaintiffs' counsel stated although he agreed with the result reached by the court of appeal, he did not agree with the way the court arrived there.
Because the parties do not dispute that the evidence shows that the products liability suit was untimely, and because neither the plaintiffs nor the state advocate the interruption of prescription by a timely-filed products liability suit alleging solidarity with the medical malpractice defendants, such is no longer at issue in this case.
The state further contends that its exception of prescription should have been granted because it proved that the medical malpractice claim had prescribed under LeBreton. The state submits that the court of appeal agreed with this proposition when it stated that, under LeBreton, "the plaintiffs' [1993] suit in district court against relators would not serve to interrupt prescription if it were against them alone because the claim with the medical review panel was not filed within the one year period so as to suspend prescription." The plaintiffs counter that LeBreton does not control in this case, or alternatively, that LeBreton is wrong and should be reconsidered, but these arguments are unpersuasive.
In LeBreton, prescription began to run on August 20, 1991, the plaintiff filed suit on August 18, 1992, and filed her panel request on August 19, 1992. The suit was dismissed on an exception of prematurity, but the plaintiff did not refile her suit until approximately five months after she was notified of the panel's opinion. The defendants filed an exception of prescription in the second suit, alleging that it was prescribed on its face. The trial court denied the exception and the fourth circuit agreed, but this court reversed. This court noted that filing suit interrupts prescription under La. C.C. art. 3462[5], whereas filing a panel request suspends prescription under La. R.S. 40:1299.47(A)(2)(a). Interruption causes a *85 new prescriptive period to commence after the period of interruption. Such is not the case with suspension; rather, the time which preceded the suspension is added to the time which follows it. Regarding statutory construction, the court explained that, when two statutes deal with the same subject matter, they should be harmonized, and if there is a conflict, the statute specifically directed to the issue must prevail as an exception to the general rule. The court said that medical malpractice cases are governed by special rules, one of which is that the filing of a panel request only suspends prescription, and that this special prescription rule conflicts with the general Civil Code articles 3466 and 3472. Indeed, the court found that if these Code articles were applied, the prescription and suspension provisions of the Medical Malpractice Act would be written out. Regarding the impact of such a conflict in medical malpractice cases, the court stated:
If we let this ruling stand, we will condone and encourage the technique of unnecessarily prolonging malpractice litigation by a lesser standard. The party who improperly files a premature medical malpractice suit without first filing the claim with the board for a medical review panel, and whose suit is subsequently dismissed without prejudice, gains an additional year in prescription in addition to the suspended time provided by the Medical Malpractice Act, within which to file suit anew.
LeBreton at p. 8, 714 So.2d at 1230. The court found that this determination comported with the rationale for suspension espoused by French doctrinal writers, specifically that suspension is a measure of equity invented through regard for persons who are not in a position to interrupt prescription, such as medical malpractice plaintiffs who, by statute, may not commence their suit until they present their complaint to a state medical review panel. Id. at p. 9-10, 714 So.2d at 1230-31 (quoting 1 Marcel Planiol & George Ripert, Traite Elementaire de Droit Civil, No. 2698 (12th ed.1939), reprinted in 1 Marcel Planiol & George Ripert, Treatise on the Civil Law, part 2 at 594 (La.St.L.Trans. 1959)). Therefore, the court concluded that there is no need for the general rules of interruption to combine with suspension "to synergistically benefit the plaintiff." Id. at p. 10, 714 So.2d at 1231.
In a later medical malpractice case, this court directly applied the rule of LeBreton to hold that the plaintiff's premature suit did not interrupt prescription. See Washington v. Fustok, 01-1601, p. 1 (La.9/21/01), 797 So.2d 56, 56. The majority noted that the panel request was filed more than one year from the date of the alleged malpractice, and therefore the filing of the panel request did not act to suspend the accrual of prescription. Id.
Under LeBreton and Washington, the premature 1993 suit in the instant case did not interrupt prescription. As stated above, the parties agree that the act of alleged malpractice occurred on July 14, 1992, and prescription accrued one year later, on July 14, 1993. The filing of the panel request on August 20, 1993 did not suspend prescription because prescription cannot be suspended after it has run. See Rizer at p. 6, 669 So.2d at 390-91. Therefore, the plaintiffs failed to file suit within one year from the date of the act of alleged malpractice.
The plaintiffs also argue that the state renounced prescription in its exception of prematurity in the 1993 suit when it stated:
Exceptors do not contend that plaintiffs are barred from ever filing suit. They have access to the Court, once their claim is reviewed by a medical *86 review panel. The constitutionality of dismissing a medical malpractice suit which does not comply with the statutory requirements has been upheld. See Everett v. Goldman, 359 So.2d 1256 (1978).
The Louisiana Circuit Courts of Appeal have dismissed uniformly lawsuits which were filed prior to a rendition of a report by a medical review panel. Authement v. Luke, 418 So.2d 743[742] (La.App. 5th Cir.1982); Roberts v. Russo, 400 So.2d 353[354] (La.App. 4th Cir. 1981); Hodge v. Lafayette General Hospital, 399 So.2d 744 (La.App. 3rd Cir. 1981); Dufrene v. Duncan, 371 So.2d 1215 (La.App. 4th Cir.1979).
We disagree. Renunciation may be express or tacit. La. C.C. art. 3450. Tacit renunciation results from circumstances that give rise to a presumption that the advantages of prescription have been abandoned. Id. Louisiana courts have consistently held that renunciation must be clear, direct, and absolute, and it must be manifested by words or actions of the party in whose favor prescription has run. Lima v. Schmidt, 595 So.2d 624, 631 (La. 1992). As far back as 1845, this court explained that renunciation of a prescription already accrued, being in the nature of the renewal of an obligation, must be specifically proven, and although it may be made tacitly, "it must result from a fact which gives a presumption of the relinquishment of the right acquired by prescription... and such fact must be necessarily and strongly connected with the debt which the party intended to revive." Courtebray v. Rils, 9 Rob. 511 (La.1845).[6] The language to which the plaintiffs direct our attention is merely a statement of law to the effect that, if a plaintiff files a premature medical malpractice suit which is dismissed, he may refile his suit after fulfilling the panel requirement. Such a statement does not mean that the second suit may not be subject to an exception of prescription if it is filed too late. The language used by the state does not give rise to a presumption that the state abandoned the advantages of prescription, and therefore prescription was not renounced.
Another contention of the plaintiffs is that the state failed to prove that the malpractice suit has prescribed from the date of discovery of the act of alleged malpractice under La. R.S. 9:5628. The plaintiffs assert that it is common sense that they had not yet discovered the alleged malpractice on July 14, 1992, and that the likelihood that they discovered the alleged malpractice before August 20, 1992 is "remote at best." The issue of prescription from the date of discovery was raised for the first time in the plaintiffs' brief in this court. In the trial court, in the court of appeal, and in the writ application and opposition filed in this court, the only prescriptive period that was argued was prescription from the date of the act of alleged malpractice. As a general rule, appellate courts will not consider issues raised for the first time in this court, which are not pleaded in the court below and which the district has not addressed. Boudreaux v. State through Dept. of Transp. & Dev., 01-1329, p. 2 (La.2/26/02), 815 So.2d 7, 8-9 Coats v. American Tel. & Tel. Co., 95-2670, p. 6 (La.10/25/96), 681 So.2d 1243, 1246 n. 5; Segura v. Frank, 93-1271, p. 15 (La.1/12/94), 630 So.2d 714, 725; Krauss Co. v. Develle, 236 La. 1072, 110 So.2d 104, 105-06 (1959); Weingart v. Delgado, 204 La. 752, 16 So.2d 254, 256 (1943); Gaines v. Crichton, 187 La. 345, 174 So. 666, 668 (1937); Succession of Quinn, 183 La. 727, *87 164 So. 781, 784 (1935). The only issue which is properly before this court is prescription from the date of the act of alleged malpractice. Although we will not address the issue of prescription from the date of discovery, we find it appropriate to exercise our discretionary power to remand the case[7] so that the trial court may decide this issue and a proper record thereon may be built.
This procedure is similar to the one we employed in White v. West Carroll Hosp., Inc., 613 So.2d 150 (La.1992). White involved a medical malpractice action that was dismissed by the trial court on an exception of prescription. On appeal, the plaintiffs argued for the first time that a previously-filed suit had interrupted prescription. This court reasoned that an appellate court is authorized to remand a case when it is a just and proper disposition based upon the record, citing Herbert v. Travelers Indem. Co., 255 La. 645, 232 So.2d 463 (1970) and Louisiana Code of Civil Procedure article 2164[8]. We declared that a remand for new evidence must be based upon examination of the merits, and that it is warranted only when the state of the record is such that the new evidence is likely to affect the outcome of the case. See White, 613 So.2d at 154 (citing Herbert, 232 So.2d at 464-65). The court stated that, if it determined that the inclusion of the evidence regarding the previous suit would affect the outcome of the prescription issue, then a remand to the trial court to include the evidence and decide the prescription issue would be warranted. The court indeed determined that the plaintiffs' interruption argument "may well have merit" and that the inclusion of the evidence regarding the previous suit was likely to affect the outcome of the prescription issue. Id. at 156. The court stated that it saw no reason to deny the plaintiffs' request to remand the case to the trial court.
In this case, the record is devoid of anything regarding the date of discovery. The petition alleges a date on which the child fell from the swing, but it never alleges the date the child was admitted to, treated at, or discharged from the hospital, and it never alleges the date the plaintiffs discovered the alleged malpractice. In that respect, the petition is poorly drafted. However, considering that this case involves a head injury to a seven-month-old child, the plaintiffs' argument that they did not discover the alleged malpractice before August 20, 1992 may well have merit. Our examination of the record reveals that, if the plaintiffs were to successfully establish that they did not discover the alleged malpractice before August 20, 1992, the medical malpractice suit might not be prescribed under La. R.S. 9:5628, thereby affecting the outcome *88 of the case. We therefore find it appropriate to remand this case to the trial court for a hearing on whether the plaintiffs' claim had prescribed from the date of discovery of the alleged act, omission, or neglect.

DECREE
For the foregoing reasons, we reverse the decision overruling the state's exception of prescription on the ground that the suit had not prescribed from the date of the act of alleged malpractice, and we remand the case to the district court for a hearing on whether the plaintiffs' claim had prescribed from the date of discovery of the alleged act, omission, or neglect.
REVERSED and REMANDED.
CALOGERO, C.J., concurs in part, dissents in part, and assigns reasons.
JOHNSON, J., concurs.
CALOGERO, Chief Justice, concurring in part, dissenting in part.
I agree with the majority that this case should be remanded to the trial court for a hearing on whether the plaintiffs' claim has prescribed from the date of discovery of the act of alleged malpractice. But, I disagree with two outset determinations in the opinion. First, I believe LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, should be overruled rather than followed. Second, I feel the plaintiffs' argument that suit against the "solidarily liable" product manufacturer interrupted prescription as to the medical malpractice defendants is still alive in this court.
As to the issue in LeBreton, I believe that filing a medical malpractice suit in the trial court prior to submission of the case to a medical review panel should interrupt prescription. Louisiana Civil Code article 3462 provides for interruption of prescription when an action is commenced in a court of competent jurisdiction and venue. While La.Rev.Stat. 40:1299.47(A)(2)(a) provides for suspension of prescription when a request for a medical review panel is made, that statute does not conflict with La. Civ.Code art. 3462. Both provisions of law can be applied together in compliance with the long standing rule that where two statutes deal with the same subject matter, they should be harmonized if possible. See State ex rel. Bickman v. Dees, 367 So.2d 283 (La.1978); Esteve v. Allstate Ins. Co., 351 So.2d 117 (La.1977). Thus, in my view, the rule in LeBreton should be overruled and in this case, plaintiffs' July 14, 1993 medical malpractice suit should have interrupted prescription.
Second, I believe that plaintiffs argument that suit against the "solidarily liable" product manufacturer interrupted prescription as to the medical malpractice defendants is still alive in this court. The majority disagreed, finding instead that the products liability case itself was prescribed because it was filed on the 366th day. I cannot entirely fault the majority for not considering the issue, especially in light of the fact that plaintiffs' counsel seemed to concede, at oral argument, that the products liability suit was untimely filed. But, I ultimately disagree with the majority's failure to address the claim.
First, neither of the lower courts found the products liability suit was untimely filed. Second, the "concession" of plaintiffs' counsel in oral argument, as I recall, was simply a concession for the purpose of argument. Third, plaintiffs specifically argued in their briefs that "the timely filed products liability suit served as a valid interruption of prescription." Fourth, the law seems to indicate that the products liability action filed on the 366th day was timely.
*89 While delictual actions ordinarily have a one year prescriptive period, Louisiana Civil Code article 3492 provides for suspension of prescription for these plaintiffs. That statute states that the liberative prescription for delictual actions "does not run against minors ... in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."
Here, the petition (1) alleged that the injured party was a minor child, (2) alleged that the minor had sustained "possible brain damage", and (3) stated a cause of action under the Louisiana Products Liability Act. For purposes of prescription, the facts pleaded in petition are to be assumed true and hence, the products liability action was not prescribed on its face. Our Lady of the Lake Hospital v. Vanner, 95-0754, p. 3 (La.App. 1 Cir. 12/15/95), 669 So.2d 463, 464. Thus, in my view, plaintiff's contention that the products liability suit interrupted prescription as to the medical malpractice claim is still alive in this court although I cannot fault the majority for not considering the issue in light of the apparent "concessions" at oral argument.
NOTES
[1] La. R.S. 40:1299.39.1(B)(1)(a)(i) states:

No action against the state, its agencies, or a person covered by this Part, or his insurer, may be commenced in any court before the claimant's complaint has been presented to a state medical review panel established pursuant to this Section.
[2] The record contains a letter dated August 20, 1993, which is attached to the state's Memorandum in Support of Exception of Prescription. The letter is from Plaintiffs' attorney to the commissioner of administration, informing the commissioner that Plaintiffs' attorney is making a claim in medical malpractice.
[3] La. R.S. 40:1299.47 states in pertinent part:

A. (1) All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section.
(2) (a) The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part.... Filing a request for review of a malpractice claim as required by this Section with any agency or entity other than the division of administration shall not suspend or interrupt the running of prescription.
[4] The petition in this case does not specify a date on which the act of alleged malpractice occurred, and the record contains no hospital records indicating when the child was admitted to or released from the hospital. However, both the state and the plaintiffs alleged July 14, 1992 as the date of the act in their filings in this court, including the writ application, the opposition to the writ application, and both parties' briefs on oral argument. In addition, the state's exception of prescription in the trial court alleged that the act occurred on July 14, 1992. At the prescription hearing, the plaintiffs did not contest July 14, 1992 as the date of the act when the state again asserted it.
[5] La. C.C. art. 3462 states in pertinent part:

Prescription is interrupted when ... the obligee commences action against the obligor, in a court of competent jurisdiction and venue. If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period.
[6] In Courtebray, the applicable renunciation article was Louisiana Civil Code article 3424 (1825), from which article 3450 of the modern Code is derived.
[7] Although an appellate court should always remand a case when the nature and extent of the proceedings dictate that course, whether any particular case should be remanded is a matter vested largely within the reviewing court's discretion. The power to remand should be exercised only according to the particular circumstances presented in each individual case.

Roger A. Stetter, Louisiana Civil Appellate Procedure § 12:22 (2001).
Determination of whether to remand is largely discretionary and is dependent on the circumstances of the individual cases. Steven R. Plotkin, 3 Louisiana Civil Procedure 518 (2001).
[8] La. C.C.P. art. 2164 states:

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.