GENEVA HAWTHORNE      *      NO. 2022-CA-0362

VERSUS      *

     COURT OF APPEAL

TULANE MEDICAL CENTER,      *
DR. JESSICA DEBORD, DR.      FOURTH CIRCUIT
ANISH J. PATEL, ET AL.      *

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-05050, DIVISION "C"
Honorable Sidney H. Cates, Judge
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *
(Court composed of Chief Judge Terri F. Love, Judge Dale N. Atkins, Judge Pro
Tempore James F. McKay, III)


Geneva Hawthorne
4808 Louisa Drive
New Orleans, LA 70126

     *PRO SE* COUNSEL FOR PLAINTIFF/APPELLANT


Kathryn M. Caraway
Ann Marie LeBlanc
Erica L. Andrews
CARAWAY LEBLANC, L.L.C.
3936 Bienville Street
New Orleans, LA 70119

     COUNSEL FOR DEFENDANT/APPELLEE


               **AFFIRMED**
               **DECEMBER 12, 2022**

This appeal arises from a medical malpractice action brought by Plaintiff, Geneva Hawthorne ("Ms. Hawthorne"), involving the death of her deceased son. Ms. Hawthorne appeals the trial court's judgment which granted summary judgment in favor of Defendant, Dr. Anish Patel ("Dr. Patel").

Dr. Patel supported his motion for summary judgment with the report of the Medical Review Panel ("MRP"), which unanimously found that Dr. Patel had not breached the appropriate standard of care. Correspondingly, Dr. Patel argued that Ms. Hawthorne did not have a medical expert to substantiate her medical malpractice allegations against him. The trial court granted Dr. Patel's motion for summary judgment and dismissed Ms. Hawthorne's action against him.

Ms. Hawthorne presented no expert witness evidence to show that she could satisfy her burden of proof at trial to prevail in her medical malpractice action against Dr. Patel. Accordingly, we affirm the trial court's judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ms. Hawthorne's son, Tajwayne Hawthorne ("Mr. Hawthorne"), a thirty-eight year old male, was admitted to the emergency room of Tulane University

1

Hospital and Clinic ("TUHC") on December 16, 2014, with reports of hypoglycemia. He was discharged on December 18, 2014. Mr. Hawthorne's diagnoses at discharge included hyperkalemia, hypoglycemia, hypertension, chronic kidney disease, and congestive heart failure. Mr. Hawthorne died on December 25, 2014.

Ms. Hawthorne filed a medical malpractice claim with the Louisiana Division of Administration Patient's Compensation Fund ("PCF") pursuant to La. R.S. 40:1231.8.[1] She contended that her son's medical providers—Dr. Patel, TUHC, Dr. Jessica Debord, Dr. Charles Chehardy, Dr. Eric Simon, Dr. Sidney Longwell, and Dr. Gabriel Fette—collectively failed to treat Mr. Hawthorne properly for his various diagnoses and prematurely discharged him. Ms. Hawthorne specifically alleged the following:

> …these doctors saw that my son had one quarter [sic] of kidney function [sic] the doctors said He need [sic] dialasis [sic] his Blood pressure was 180/1000 on 12-16-14. His Hemoglobin of 8.6 91/dl significantly deteriorated Kidney function 6.5-mg dl which amounts to about 16% of remaining Kidney function dialasis [sic] should have been started, Right [sic]. A Rash on his legs + Back the skin was falling off the drs [sic] said they didn't know why the fluid Had His Body Swollen, one doctor stated about fluid and a very enlarged Hart, [sic] why wasn't thoracentesis preform [sic], …

The MRP met and unanimously found that none of the medical providers breached the standard of care in their respective treatments of Mr. Hawthorne. In

---

[1] La. R.S. 40:1231.8.A(1)(a) provides, in relevant part, that "[a]ll malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section."

reviewing the care rendered by Dr. Patel, along with some of the other physicians, the MRP concluded the following:

<u>AS TO DR. ERIC SIMON, DR. JESSICA DEBORD, DR. ANISH PATEL AND DR. GABRIEL FETTE:</u>

1. The patient was not experiencing fluid overload as his weight was measured regularly and little change was seen during his hospitalization. Input and Output (I/O) readings can be inaccurate and regular weight measurements are used in lieu of I/Os for fluid management.

2. There was no evidence of hypoxemia and no requirements for supplemental oxygen during his hospitalization, which indicated no pulmonary edema due to volume overload.

3. Based upon the records provided, the patient was not in need for emergent dialysis during his hospitalization. Dr. Simon's plan to educate the patient on positional dialysis was reasonable and appropriate. An appointment was scheduled on December 29, 2014, with Dr. Paramesh for peritoneal dialysis.

4. The patient's effective kidney was slow, but there were no symptoms of uremia, which could warrant immediate dialysis. The patient's acidosis was addressed by adding bi-carbonate, which would also treat hyperkalemia.

5. Based upon a review of the patient's telemetry strip from EMS, there was no electrocardiographic evidence of hyperkalemia.

6. Discharge was appropriate as the patient's condition was stable. He was discharged with proper medication and the patient was capable of normal activities for daily living. Discharge with a low dose ACE inhibitor was appropriate.

Thereafter, Ms. Hawthorne, filed a *pro se* petition for damages ("Petition") naming the aforementioned medical providers as defendants. In the Petition, Ms. Hawthorne's fault allegations included the following:

. . . that Tulane and its physicians deviated from the standard of care by failing to dialyze [sic] and for failing [sic] treat all medical condition [sic] for Mr. Hawthorne

3

while he was admitted and treated by Tulane from 12/16/16 through 12/18/2016, [sic] prematurely discharged him and failed to schedule timely follow up appointments. Mr. Hawthorne presented to Tulane volume overloaded, with CHR and Hyperkalemia. The therapies did not Demonstrate [sic] improvement at all to [sic] some Instances [sic] or sufficient in others [sic] to safely Discharge [sic] Mr. Hawthorne and Discharge Instructions were devoid of timely follow up lab [sic] or appointments.

Subsequent to answering Ms. Hawthorne's Petition, discovery demands were propounded to Ms. Hawthorne. The interrogatories submitted encompassed a request for Ms. Hawthorne to identify an expert who would testify that the defendants breached the standard of care. In response, Ms. Hawthorne identified Dr. Leonardo Seoane, an Ochsner physician. However, when the defendants attempted to schedule Dr. Seoane's deposition, Ochsner's Legal Affairs Department advised that Dr. Seoane had never agreed to be Ms. Hawthorne's expert.

Thereafter, the defendants filed separate motions for summary judgment, each relying on the MRP report which absolved them of liability and Ms. Hawthorne's failure to retain an expert. The trial court granted the motion for summary judgment of TUHC on July 18, 2019; granted the summary judgment motion of Drs. Longwell and Chehardy on March 9, 2020; and granted the summary judgment motion of Drs. Debord, Simon, and Fete on July 2, 2020.

The hearing on Dr. Patel's motion for summary judgment was continued from October 22, 2021, until February 4, 2022, based on Ms. Hawthorne's claim that she was seeking representation. Ms. Hawthorne remained unrepresented at the hearing. At the hearing, Dr. Patel re-urged that he was entitled to summary judgment relief based on the MRP's findings that he did not breach the standard of care and Ms. Hawthorne's lack of a medical expert witness to establish that he had breached the

4

standard of care. Ms. Hawthorne countered that Dr. Seoane had failed to respond to her subpoena to appear at the hearing and maintained that Dr. Seoane had written a letter that established that the defendants had not practiced the standard of care in their treatment of her son. After argument, the trial court granted Dr. Patel's motion for summary judgment.

This appeal followed.

## STANDARD OF REVIEW

Established jurisprudence provides that "appellate courts are to review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Descant v. Herrera*, 03-0953, p. 8 (La. App. 4 Cir. 12/22/04), 890 So. 2d 788, 793.

In *Varnado v. 201 St. Charles Place, LLC*, 22-0038, pp. 7-8 (La. App. 4 Cir. 6/29/22), 344 So. 3d 241, 248, this Court, citing La. C.C.P. art. 966(A)(2), wrote, "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action," and the favored procedure "shall be construed to accomplish these ends." "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). La. C.C.P. art. 966(D)(1) provides:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more

5

elements essential to the adverse party's claim, action, or defense.

Once the mover shifts the burden of proof, "an adverse party may not rest on the mere allegations or denials of his pleading" to satisfy his burden of proof. *See* La. C.C.P. art. 967(B).[2] Instead, "[t] he adverse party then must 'produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.'" *Varnado,* 22-0038, p. 8, 344 So. 3d 241, 249. The failure of the non-moving party to produce evidence of a material factual dispute in a properly supported motion for summary judgment mandates the granting of the motion. *Wright v. La. Power & Light,* 06-1181, p. 16 (La. 3/9/07), 951 So. 2d 1058, 1070.

## BURDEN OF PROOF/MEDICAL MALPRACTICE

In accordance with La. R.S. 9:2794(A),[3] in order to prevail in a medical malpractice action against a physician, the plaintiff must prove the following three

---

[2] La. C.C.P. art. 967(B) provides, in pertinent part, that:

> When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

[3] La. R.S. 9:2794(A) states the following:

A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., an optometrist licensed under R.S. 37:1041 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily

6

elements: (1) the applicable standard of care expected of physicians in the physician's medical specialty, (2) a breach of that standard of care, and (3) a causal connection between the alleged breach and the plaintiff's resulting injuries. *See In re Med. Rev. Complaint by Downing*, 21-0698, p. 9 (La. App. 4 Cir. 5/26/22), 341 So. 3d 863, 870. As a general rule, given the complex factual and medical issues involved in a medical malpractice claim, the plaintiff must provide expert testimony in order to establish the elements required to meet the plaintiff's burden of proof. *See Jordan v. Cmty. Care Hosp.*, 19-0039, pp. 12-13 (La. App. 4 Cir. 7/24/19), 276 So.3d 564, 576. Courts have recognized an exception to this rule in cases of obvious negligence for those "instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can . . . ." *Pfiffner v. Correa*, 94-0992, 94-0963, 94-0924, p. 9 (La. 10/17/94), 643 So.2d 1228, 1234.

The burden of proof requirements between the plaintiff and the defendant in a medical malpractice motion for summary judgment were further explained in *Jordan*, 19-0039, p. 12, 276 So.3d at 576, as follows.

> A defendant-health care provider does not have the burden of disproving medical malpractice; rather, a defendant-health care provider only must point out that the plaintiff cannot support his claim. Once a defendant-health care provider has established an absence of factual support for an essential element of the plaintiff's claim, the

---

practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

7

plaintiff must come forth with evidence to preclude summary judgment. *See* La. C.C.P. art. 967(B).

We now apply these precepts in our review of Ms. Hawthorne's assignments of error.

## *ASSIGNMENTS OF ERROR*

Ms. Hawthorne's assignments of error essentially contend that the trial court erred in granting Dr. Patel's motion for summary judgment because (1) she did not receive a subpoena to appear at trial, and (2) the trial court impeded her ability to offer expert testimony in that it failed to order Dr. Seoane to comply with her subpoena and did not consider or admit into evidence Dr. Seoane's August 28, 2017 e-mail letter which purportedly stated that the standard of care was not practiced in the treatment of Mr. Hawthorne.[4]

### *Assignment of Error No. 1: Ms. Hawthorne's Trial Subpoena*

This error infers that summary judgment relief should have been denied because Ms. Hawthorne was not served with a subpoena providing notice of Dr. Patel's motion for summary judgment hearing. However, close scrutiny of the record shows that Ms. Hawthorne never complained at the hearing that Dr. Patel failed to serve her with notice of his summary judgment hearing date; instead, she complained that she was not subpoenaed to appear at the hearings involving the other defendants who had been granted summary judgment, resulting in the dismissal of her action against those parties. The record reflects the following colloquy:

---

[4] Dr. Seoane's letter was addressed to David A. Abramson, affiliated with the firm of Lewis, Kullman, Sterbcow & Abramson. The exact relationship between Ms. Hawthorne and Mr. Abramson is unknown.

**MS. HAWTHORNE**:

> Okay. As for as the other doctors being dismissed, I moved. I did not get their subpoena, so therefore, I wasn't aware that I was supposed to be in court. I didn't get the subpoena, so I don't feel that they should have been dismissed without my knowledge.

Accordingly, based on the foregoing, any claim by Ms. Hawthorne that the trial court erred because she was not properly served with notice of the hearing date of Dr. Patel's motion for summary judgment amounts to an error raised for the first time on appeal. Our jurisprudence provides that as a general rule, appellate courts will not consider issues raised for the first time on appeal that were not pleaded in the trial court or were not addressed by the trial court. *Geiger v. State, ex rel. Dept. of Health and Hosp.*, 01-2206, p. 11 (La. 4/12/02), 815 So.2d 80, 86. Hence, as Ms. Hawthorne failed to plead or object to service at trial as it pertains to Dr. Patel's summary judgment hearing, this error is not properly before this Court for review.

## *Assignment of Error Number Two: Expert Witness*

Dr. Patel, as the mover, satisfied his initial burden of proof with the MRP report and the affidavits from the MRP members. Our jurisprudence is well settled that a defendant-health care provider can use the medical review panel's favorable opinion to support a summary judgment motion. *See Samaha v. Rau*, 07-1726, pp. 17-18 (La. 2/26/08), 977 So.2d 880, 891. Therefore, inasmuch as this matter was not a case of obvious negligence and Dr. Patel had properly supported his motion for summary judgment with the MRP report, the impetus for Ms. Hawthorne to produce expert testimony became especially "apt." *Jordan*, 19-0039, p. 13, 276 So.3d at 577.

Ms. Hawthorne iterates that she attempted to meet her requirement to produce expert testimony when she issued a subpoena to compel the appearance of Dr. Seoane, the physician, she had identified as her expert in her discovery responses. She maintains that Dr. Seoane disregarded the subpoena and the trial court improperly did not compel his appearance. Ms. Hawthorne represents that Dr. Seoane's e-mail letter indicated deviations from the standard of care by the defendants. As a result, Ms. Hawthorne argues that she would have been able to meet her burden of proof had Dr. Seoane been compelled to appear at the hearing and his e-mail letter admitted into evidence. We disagree.

Ms. Hawthorne's argument that Dr. Seoane should have been compelled to appear at the hearing suggests that the hearing should have been continued. "For good cause shown, the court may order a continuance of the hearing." La. C.C.P. art. 966(C)(2). Here, the record establishes that Ms. Hawthorne never formally retained Dr. Seoane as an expert witness. Moreover, by the time of the hearing, more than four years had lapsed since the time Dr. Seoane wrote his letter. Thus, Ms. Hawthorne had more than adequate time to retain Dr. Seoane as an expert, schedule his deposition, or request an affidavit. Ms. Hawthorne did not demonstrate good cause for the trial court to continue the hearing in order to compel Dr. Seoane's appearance. Therefore, this argument is without merit.

As to the admissibility of Dr. Seoane's letter, we initially note that Ms. Hawthorne did not file an opposition memorandum. "Any opposition to the motion and all documents in support of the [motion] shall be filed and served in accordance with Article 1313 not less than fifteen days prior to the hearing." La. C.C.P. art. 966(B)(2). The Louisiana Supreme Court has ruled that the trial court does not abuse

10

its discretion in refusing to consider a late-filed opposition to the motion for summary judgment. *See Buggage v. Volks Constructors*, 06-0175 (La. 5/5/06), 928 So.2d 536 (finding that "[t]he time limitation[s] established by La. C.C.P. art. 966(B) for the serving of affidavits in an opposition to a motion for summary judgment is mandatory" and that "affidavits not timely filed can be ruled inadmissible and properly excluded by the trial court.").

Additionally, La. C.C.P. art. 966(A)(4) clarifies that "[t]he only documents that may be filed in support of or in opposition to the motion [for summary judgment] are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." In the present matter, Dr. Seoane's letter did not constitute sworn testimony in the form of an affidavit or deposition testimony. Therefore, in consideration that Ms. Hawthorne did not timely file an opposition and did not properly oppose the summary judgment motion with an affidavit or other sworn testimony as provided for in La. C.C.P. art. 966(A)(4), Dr. Seoane's letter was properly excluded and not considered by the trial court. [5]

Notwithstanding, had the letter been admitted into evidence, it still was insufficient to defeat Dr. Patel's motion for summary judgment. As established by La. R.S. 9:2794(A), the plaintiff's burden of proof in a malpractice action is to not only identify the standard of care, but to also establish that the breach of the standard of care resulted in the plaintiff's injuries. In *Simon v. Allen Oaks, LLC*, 20-0005, p.1 (La. App. 3 Cir. 6/10/20), 298 So.3d 881,882-83, the family of a nursing home

---

[5] A review of the record also shows that Ms. Hawthorne did not offer Dr. Seoane's letter into evidence.

resident filed a malpractice action against the nursing home alleging that the resident died from bed sores, infections, and amputation caused by the nursing home's negligence. Plaintiff's expert asserted that "the facility['s] staff failed to treat Mr. Simon within the proper standards of care and that this failure was the proximate cause of Mr. Simon's injuries." *Id.*, 20-005, p. 4, 298 So.3d at 884. The appellate court affirmed the trial court's grant of summary judgment in favor of the nursing home, finding that the expert's opinion was speculative, conclusory, and devoid of any underlying and supporting facts regarding the standard of care that was allegedly breached. *Id.*, 20-005, p. 10, 298 So.3d at 887.

Likewise, in the present matter, even if Dr. Seoane's letter had satisfied the requirements to be admitted into evidence, its finding that the "standard of care was not practiced" did not identify the standard of care required by Dr. Patel or show that the breach caused Mr. Hawthorne's damages. Thus, Ms. Hawthorne offered no evidence to meet the required elements to satisfy her burden of proof at trial so as to defeat Dr. Patel's motion for summary judgment. [6]

## DECREE

Ms. Hawthorne did not retain an expert to support her claims of medical malpractice against Dr. Patel. Accordingly, Ms. Hawthorne failed to meet her burden of proof to show that any breach of the standard of care by Dr. Patel caused her son's injuries and resulting death. Based on the foregoing, the judgment of the trial court is affirmed.

---

[6] We also note that Dr. Seoane's letter identified himself as Associate Professor, Head of School, University of Queensland Ochsner Medical School; however, it did not specify his qualifications to render an opinion on any breach of the standard of care of Dr. Patel or the other named defendants.

**AFFIRMED**