150 So. 855

**NORTON et al. v. CRESCENT CITY ICE MFG. CO., Inc.**

No. 32372.

Oct. 30, 1933.

Pomes & McCabe, of New Orleans, for applicant.

I. E. Uzzo and James J. Landry, both of New Orleans, for respondents.

ROGERS, Justice.

William S. Norton was injured by a truck owned by the Crescent City Ice Manufacturing Company, Inc., on August 8, 1930, and died as a result of his injuries on August 10, 1930.

Subsequently, decedent's six major children, admittedly his sole heirs, brought suit against the Crescent City Ice Manufacturing Company, Inc., to recover $31,000, in the proportion of one-sixth to each, for the damages their deceased father could have recovered if he had survived his injuries. In the prayer of their petition, plaintiffs reserved their rights to institute one or several suits against the defendant to recover the damages sustained by them by the death of their parent.

The defendant, by way of exception, objected to plaintiffs' reservation of their rights to subsequently file one or more suits for the recovery of damages suffered directly by them by reason of their father's death. The exception was overruled by the judge of the district court to whom the case was originally allotted, but, due to the illness of that judge, the case was re-allotted to another judge of the same court, after which, on defendant's application, a new trial of the exception was granted. On the second hearing of the exception, the trial judge announced that defendant's objection was well founded and that he would permit defendant to file a rule to compel plaintiffs to elect whether they would withdraw their reservation and abandon all their rights to subsequently sue on their direct claims for damages, or whether they would amend their petition so as to include their direct claims in their present suit. Plaintiffs then filed a motion to withdraw their reservation, at the same time informing the court and defendant that they intended to file their additional suit or suits as originally contemplated.

Because of plaintiffs' action, the rule to elect was not presented, but, in lieu thereof, defendant filed a supplemental answer in which, after denying liability, defendant prayed, in the event it should be found liable, that plaintiffs' recovery be limited to the claim set forth in their petition, and that plaintiffs be enjoined from ever asserting, in this or in any other suit, any claim for their direct losses growing out of the death of their father.

On the merits, judgment was rendered in plaintiffs' favor for $3,000, as the amount to which the deceased, himself, would be entitled had he survived his injuries. The judgment also permanently enjoined plaintiffs from su-

ing defendant on any claims for their direct losses.

Plaintiffs appealed, asking that the injunction be recalled and that the amount of the judgment in their favor be increased. Defendant answered the appeal, praying for a reduction in the amount of the judgment.

The Court of Appeal approved the $3,000 award to plaintiffs, but annulled the judgment in its entirety and remanded the case in order to permit plaintiffs to amend their pleadings so as to assert any and all claims arising out of the death of their father which they might have. A writ of certiorari has brought the case here.

This court, reversing the Court of Appeal for the Parish of Orleans, held in the case of Reed v. Warren, 18 La. App. 31, 132 So. 250, Id., 172 La. 1082, 136 So. 59, that under article 2315 of the Civil Code, as amended by Act No. 159 of 1918, when the right of action is vested in two or more survivors of the deceased injured person, the defendant in the suit has the right to require that all parties having the right of action shall be made parties to a single suit. This is so, as explained by the court, and as summarized in the syllabus to the opinion published in the state report, "because the right of action for damages suffered by the injured person is for a sum of money in which, if there are two or more survivors entitled to the right of action, each has an equal interest, and, although the amounts which the survivors are entitled to for the loss of the companionship and affection of the deceased may be unequal, defendant should not thereby be subjected to the annoyance and expense of defending numerous lawsuits, all founded upon the same cause of action and dependent upon the same relevant facts and the same defenses, since the damages are claimed for one tort, the killing of one person, and there is only one cause of action."

While this court did not expressly hold in Reed v. Warren that the transmitted claim and the direct claim must be asserted in the same suit, that question not being presented for determination, the Court of Appeal, in this case, held that the decision manifested the views of the Supreme Court on the question, and definitely settled the jurisprudence of the state, to the effect that "in such a situation as was presented by the death of Norton, only one suit may be brought and that by all the survivors and that that suit must include both the claim transmitted to the survivors by the death of the deceased and the respective claims of each survivor for his or her direct losses."

And the Court of Appeal remarked in its opinion herein that, if the case of Reed v. Warren had been decided by the Supreme Court at the time plaintiffs were called upon to elect in the district court, plaintiffs could have no fault to find with the court's ruling in which they were, in effect, required to choose whether they would present all their claims or only their transmitted claims in this suit.

However, the Court of Appeal considered that the existing jurisprudence on the controverted question was as it had declared it to be in Reed v. Warren; and that, notwithstanding its decision had been reversed on writ of certiorari by the Supreme Court, the plaintiffs believed the decision set forth the law on the subject, and the question present-

ed was, not whether plaintiffs' action in refusing to elect was justified by the law as it was later announced by the Supreme Court, but whether it was justified by the jurisprudence as they found it.

The case of Eichorn v. New Orleans & C. R. Light & Power Co., 112 La. 236, 36 So. 335, 104 Am. St. Rep. 437, is referred to in the original opinion of the Court of Appeal (146 So. 753), and the case of Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 889, 12 L. R. A. (N. S.) 632, is referred to in the per curiam refusing a rehearing ([La. App.] 147 So. 385), as authorizing the refusal by plaintiffs to amend their pleadings so as to include therein all their claims for damages arising out of the injury and death of their father.

And the Court of Appeal concluded that the decision of this court in Reed v. Warren should not be given retrospective effect, and that, in the exercise of its equity powers, it should remand the case in order to permit plaintiffs to amend their pleadings so as to present for judicial determination all their claims against defendant, which the court by its judgment proceeded to do.

It is clear that plaintiffs in filing their suit were not influenced by the rule announced by the Court of Appeal in Reed v. Warren. Plaintiffs' suit was filed on November 3, 1930; whereas the decision of the Court of Appeal in Reed v. Warren was not rendered until January 19, 1931. It may be true, plaintiffs had the decision in mind on May 8, 1931, when they were called on to elect, but the decision was not final and controlling because at that time the case was pending on review before this court under a writ issued

on March 30, 1931. Salittes v. Southern Pub. Co., 140 La. 739, 73 So. 847. The decision of this court was handed down on June 22, 1931.

We have not been referred to any case holding that one claiming damages for a single tort could maintain more than one suit for the recovery of such damages. In our opinion, neither Eichorn v. N. O. & C. R. Light & Power Co. nor Robideaux v. Hebert, so holds.

In the Eichorn Case, which was cited and commented upon in Reed v. Warren, the widow brought suit in her own behalf wherein she asserted all the claims accruing to her by reason of the injury and ensuing death of her husband. As shown by the court's opinion in the case, plaintiff, under the transmitted claim, demanded $5,000 for the suffering of her husband, and $45,000, under the direct claim, for the loss of her husband's comfort and support. The actual allegation of plaintiff's petition, as appears from the transcript on file in this court, is: "Forty-five thousand dollars for petitioner's loss of his (petitioner's deceased husband's) comfort, society and support."

The minor children were not parties to their mother's suit, but subsequently a separate suit was instituted on their behalf for the recovery of the damages occasioned them by the death of their father.

No objection was made by the defendant in the first suit to the want of the necessary parties, but the court took upon itself to condemn the practice of bringing two or more suits when a single suit would be sufficient. The court's declaration was a plain warning to future litigants similarly situated not to indulge in the mischievous practice.

In the Robideaux Case, the transcript on file in this court discloses that the widow and minor children suing demanded damages for Robideaux's death under both their transmitted and direct claims. No objection was urged in limine litis that Robideaux's two minor children by a prior marriage were not parties to the suit. As stated in the opinion, that fact developed only on the trial of the case. The transcript shows that when this occurred, defendant filed a motion, which was overruled, for the dismissal of the suit, because all parties in interest were not parties to the suit. This court properly held that plaintiffs should not go out of court because the minor children of the first marriage had not been joined with them. The court said, in ruling on the question: "Whilst, no doubt, in such case, all the beneficiaries may join in the same suit, and it may be desirable that they should, they are not obliged to do so, and the failure or refusal of one of them to act cannot preclude the others."

In making that statement the court might have been influenced by the failure of the defendant to insist at the beginning of the litigation that the two minor children of the decedent by his prior marriage should join, or, by the proper proceeding, be given an opportunity to join or to refuse to join, the plaintiffs in the suit. As indicated in Reed v. Warren, that would have been the correct procedure. And the court in the Robideaux Case might well have rested its ruling on the ground that the motion to dismiss was, in effect, an exception of nonjoinder, which could have been pleaded only in limine litis—not after the case was put at issue on its merits. Code Prac. art. 333; Caro-

lina Portland Cement Co. v. Southern Wood Distillates, etc., Co., 137 La. 469, 68 So. 831.

As we have hereinabove shown, this court decided in Reed v. Warren that only a single tort is created where death is caused by the fault of another, namely, the killing of one person, and that only one cause of action arises for the damages occasioned thereby. We do not find anything in our prior jurisprudence that is opposed to that decision. On the contrary, the law reprobates a multiplicity of actions and aims to protect parties against the annoyance of repeated lawsuits in regard to the same subject-matter. Stafford v. Stafford, 25 La. Ann. 223. The principle has been incorporated in the Code of Practice, article 156 of which reads as follows, viz.: "If one demands less than is due him, and do not amend his petition, in order to augment his demand, he shall lose the overplus." And the codal article has been held to prohibit the dividing of one debt for separate suits. See In re Dimmick's Estate, 111 La. 655, 35 So. 801.

The general rule governing the question is stated in Corpus Juris, volume 1, at page 1116, as follows, viz.: "The rule against splitting causes of action applies to causes of action arising ex delicto, the rule being that a single wrong gives rise to but one cause of action for which only one action can be maintained, however numerous the elements or items of damages resulting therefrom may be, and the rule cannot be evaded by varying the form of action in the different actions sought to be maintained in the same cause." French v. Landis, 12 Rob. 635, is cited, among other cases, in support of the statement.

In virtue of what we have hereinabove stated, we find ourselves unable to harmonize

our views with the views expressed by the Court of Appeal in remanding this case.

At the beginning of the litigation, plaintiffs were given an opportunity to amend their pleadings so as to include therein all elements or items of damages which they suffered by reason of the injury and ensuing death of their father. They did not choose to do so, and we do not think that at this late date they should be permitted to mend their hold and to subject defendant to the annoyance and expense of further litigation founded on the same cause of action dependent on the same relevant facts and the same defenses. There would be no end to litigation if such a practice were permissible.

In our opinion, plaintiffs were not justified in their refusal to amend their pleadings because they construed the existing jurisprudence as authorizing the procedure which they followed.

In the first place, as we have hereinabove attempted to show, we think they were mistaken in their construction of the jurisprudence, and that, even prior to our decision in Reed v. Warren, the whole tendency of this court's decisions was to forbid a plaintiff to divide his grounds of recovery and to require him to assert his whole cause of action and to try his case at the same time.

In the second place, the decisions of a court of last resort are not the law, but only the evidence of what the court thinks is the law. The law as construed in an overruled case is considered as though it had never existed, and the law as construed in the last case is considered as though it has always been the law. As a general rule, the law as construed in the last decision oper-

ates both prospectively and retrospectively, except that it will not be permitted to disturb vested rights.

And there can be no vested right on a claim for damages ex delicto until judgment is rendered thereon.

Plaintiffs contend that the amount of the judgment rendered by the district court is inadequate. The defendant, answering the appeal, contends that the amount awarded is excessive. However, the Court of Appeal approved the award of the district court, and we see no reason to change it. The deceased's injuries must have been necessarily attended by considerable suffering. The records of the Charity Hospital, in New Orleans, show that the injuries of the deceased consisted of a compound comminuted fracture of the left leg, fracture of the right femur, laceration of the forehead, general contusions, and brush burns. The deceased was admitted to the hospital at 8 o'clock a. m. on August 8, 1930, and he died there at 12:45 a. m. on August 10, 1930, as the surgeons were about to amputate both legs.

The Court of Appeal expressed the view that no injunction should have been issued by the district court, because it would be time enough for defendant to plead in another suit that all the rights of the parties litigant had been finally determined in this suit.

But the question of whether the injunction properly issued has passed out of the case. The six plaintiffs, approximately two months after the judgment was rendered in this suit by the district court, filed another suit in that court for the recovery of $60,750 on their direct claim for damages arising out of the death of their father.

Plaintiffs' second suit was dismissed by the district court on an exception of res judicata. The Court of Appeal, because it had remanded this case to permit plaintiffs to assert their claim for their direct losses resulting from the father's death, reversed the judgment and dismissed plaintiffs' suit as in case of nonsuit. In that case, which was also brought before us on certiorari, we have this day annulled the judgment of the Court of Appeal and reinstated the judgment of the district court. See William C. Norton et al. v. Crescent City Ice Mfg. Co., Inc., 178 La. 150, 150 So. 859.

For the reasons assigned, the judgment of the Court of Appeal is annulled, and the judgment of the district court is reinstated and made the final judgment of this court. The costs incurred in the district court and in the Court of Appeal are to be paid by the defendant; the costs in this court are to be paid by plaintiffs.

ODOM, Justice (dissenting).

I do not concur in the holding that in cases where a parent is injured through the fault of another and death finally results from such injuries, his children have only one cause of action against the person by whose fault the injury happened. I think they have or may have two separate and distinct causes of action, one for the amount of damage which the deceased could have recovered had he survived, and another for the damage "sustained by them by the death of the parent." C. C. art. 2315.

It is true that the origin of the right or cause of action is the same in each case, that is, the negligent act of the person who caused the injury and resulting death. But when a person is injured through the fault of another and is thereby entitled to recover any element of damages, the right and cause of action which he would have had if he had survived is inherited by his children in case of his death. They inherit that which accrued to the deceased prior to his death and the right to recover it. In other words, they inherit that which belonged to the deceased at the time of his death. The right to recover in such cases accrues to the descendants, not because of any injury which they have sustained by the fault of another, but by virtue of their inheritance of that which had accrued to their ancestor on account of the injuries which he had sustained.

The right of action which an injured person has to recover damages from a person who negligently injures him and the amount due him therefor constitute an asset of his succession in case of his death. This asset is inherited by his survivors. The right to recover in this instance gives right to a separate cause of action granted by the Code. This is not a cause of action to recover damages accruing to the heirs because of the fault of another, but a cause of action to recover that which would have been due the injured person had he survived. This right of action is expressly granted to the survivors by the Code.

The survivors, however, have another cause of action; that is, to recover damages which they sustain on account of the death of the deceased. The Code provides in a separate paragraph that:

"The survivors above mentioned *may also recover the damages sustained by them by the death of the parent.*" (Italics are mine.)

This right of action has no connection whatever with the right of action to recover that which the heirs have inherited. I think the language of the Code makes that plain. A child may or may not be damaged by the death of the parent; a wife may or may not be damaged by the death of her husband, or a sister by the death of a brother. Whether damage is sustained depends altogether upon the circumstances. If the survivor is in fact damaged by the death of the deceased, he has a cause of action to recover the damage sustained, but that cause of action grows out of the damage which the heir has sustained personally on account of the death of the deceased. This latter is not an inherited right, while the former is.

In the latter case there are or may be as many claims as there are damaged parties, all separate and distinct. Each child has a right and cause of action to recover the amount of damage which he has suffered. The amount which each child may recover depends upon the amount of his damage. One may be entitled to recover nothing, another very little, and still another very much. There is no privity of interest between the heirs, no common cause. No one of the heirs has any interest in the right or cause of action which the Code gives the others.

If the driver of an automobile negligently runs into a crowd and kills six persons, unrelated, each has a separate cause of action against the wrongdoer, notwithstanding these causes of action arise from a single wrong. No one of them would have any interest in the right of the other to claim damages, and for that reason it would hardly be contended that all of them would have to join in the same suit to recover that which was due each merely because the injury to each arose from a single wrong.

I concur in the holding that all those jointly interested in the inherited right of action should be joined in the same suit. There is reason and sound policy to support that ruling. There is but one debt and all those interested therein should join in one action to recover it. I dissented in the case of Reed v. Warren for the reasons stated here, that is, that the survivors have two separate and distinct causes of action and for that reason cannot be compelled to join in the same suit.

I dissent.