939 So.2d 1216 (2006)
Delbert W. BUSH, et al.
v.
NATIONAL HEALTH CARE OF LEESVILLE, et al.
No. 2005-C-2477.
Supreme Court of Louisiana.
October 17, 2006.
Blue Williams, Robert I. Baudouin, Kurt S. Blankenship, Mandeville, for Applicant.
Dunahoe Law Firm, Otis E. Dunahoe, Jr., for Respondent.
PER CURIAM.
At issue in this medical malpractice claim is whether this court's holding in LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, applies retroactively. For the reasons assigned, we conclude it does and therefore reverse the judgment of the court of appeal which denied defendant's exception of prescription.

UNDERLYING FACTS AND PROCEDURAL HISTORY
On July 8, 1996, Daniel Bush, then a minor, began experiencing severe pain in *1217 his abdomen. Daniel's father took him to the emergency room at Byrd Regional Hospital in Leesville, Louisiana. At the hospital, Daniel was examined by Dr. Celeste Lujan-Baez, who diagnosed him as suffering from a possible testicular torsion and ordered additional tests. Dr. Lujan-Baez found the tests to be inconclusive. Daniel was ultimately transferred to St. Francis Cabrini Hospital in Alexandria. By that time, his testicle was no longer viable and had to be removed.
On July 8, 1997, Daniel's parents, individually and on behalf of Daniel, filed a medical malpractice suit in 30th Judicial District Court for the Parish of Vernon against Dr. Lujan-Baez and National Health Care of Leesville, Inc., d/b/a Byrd Regional Hospital ("Byrd"). The petition alleges Dr. Lujan-Baez unnecessarily delayed the decision to transfer Daniel to an appropriate hospital for surgery which caused the loss of his testicle.
On September 23, 1997, more than one year after the alleged malpractice, plaintiffs filed a medical malpractice complaint with the Patients' Compensation Fund ("PCF"). In that complaint, they requested that a medical review panel be convened to review the malpractice claims against Dr. Lujan-Baez.
In February 1999, Dr. Lujan-Baez filed an exception of prematurity in the district court proceedings. She asserted that she was a qualified health care provider under Louisiana Medical Malpractice Act. Therefore, she contended the suit was premature until proceedings before the medical review panel were concluded. On April 21, 1999, prior to a hearing on the exception, plaintiffs voluntarily dismissed their suit against Dr. Lujan-Baez without prejudice, but maintained their action against Byrd.[1]
On January 10, 2000, the medical review panel issued its opinion, finding that Dr. Lujan-Baez did not breach the applicable standard of care. Thereafter, on February 24, 2000, plaintiffs filed the instant suit against Dr. Lujan-Baez in the district court.
Subsequently, Dr. Lujan filed an exception of prescription. The trial court denied the exception, reasoning the initial suit filed timely on July 8, 1997 against Byrd Regional Hospital interrupted the prescription as to the claim against Dr. Lujan-Baez, because she was a potential joint or solidary obligor with Byrd.
Thereafter, Byrd filed a motion for summary judgment, arguing plaintiffs failed to produce any evidence demonstrating negligence on its part. The trial court conducted a hearing on the motion. By written judgment dated July 25, 2001, the trial court granted the motion dismissing plaintiffs' suit against Byrd with prejudice. Plaintiffs did not appeal this judgment, and it is now final.
Thereafter, the suit proceeded to a bench trial. At the conclusion of trial, the trial court found Dr. Lujan-Baez breached the standard of care by delaying the transfer which caused Daniel Bush to lose the chance of saving the testicle. Accordingly, the trial court rendered judgment in favor of plaintiffs and awarded them $50,000 in damages.
Dr. Lujan-Baez appealed the judgment of the trial court and filed an exception of prescription with the court of appeal.[2] In *1218 support of her exception, Dr. Lujan-Baez relied on LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, for the proposition that plaintiffs' initial suit filed in district court on July 8, 1997 was premature as to her and did not interrupt prescription for the malpractice complaint. In addition, Dr. Lujan-Baez asserted that since Byrd was dismissed from the suit, she was no longer a solidary or joint obligor with it; therefore, prescription was not interrupted under this ground either.
The court of appeal denied Dr. Lujan-Baez's exception of prescription and affirmed the trial court judgment on liability and damages finding that the "medical testimony supported the conclusion that Dr. Lujan-Baez did not act quickly enough to get Daniel the help he needed to save his testicle." As to prescription, the court of appeal first noted that at the time plaintiffs filed the initial suit in the district court on July 8, 1997, this court had not rendered its opinion in LeBreton. Rather, the court of appeal found the prevailing jurisprudence in the Third Circuit at the time was reflected by Hernandez v. Lafayette Bone & Joint Clinic, 467 So.2d 113 (La.App. 3rd Cir.1985), which held that filing a suit in district court against a qualified health care provider interrupts the prescription for filing a medical malpractice complaint with the medical review panel. The court recognized that in 1998, while the instant claim was pending before the medical review panel, this court issued its opinion in LeBreton, overruling Hernandez. The court of appeal acknowledged that applying the LeBreton's interpretation, plaintiffs' claim would be prescribed due to their failure to file the malpractice complaint with the medical panel within one year from the alleged malpractice. Nonetheless, the court of appeal reasoned that applying LeBreton retroactively to the instant case would be "patently unfair" to parties who relied on prior "settled jurisprudence" that allowed interruption of prescription by filing suit in district court prior to a request for medical review panel. Accordingly, the court of appeal declined to apply LeBreton as it would affect plaintiffs' pre-existing vested right in their claim. Bush v. National Health Care of Leesville, 05-337 (La.App. 3rd Cir.11/2/05), 923 So.2d 150.
Upon Dr. Lujan-Baez's application, we granted certiorari to consider the correctness of that decision. Bush v. National Health Care of Leesville, 05-2477 (La.4/24/06), 926 So.2d 528.

DISCUSSION
It is undisputed that plaintiffs' September 23, 1997 medical malpractice complaint was filed with the PCF more than one year from July 8, 1996, the date of the alleged malpractice. Although plaintiffs' July 8, 1997 lawsuit was filed in the district court within one year of the alleged malpractice, our opinion in LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, makes it clear that the filing of a lawsuit against a qualified health care provider prior to review by the medical review panel is prohibited. In LeBreton, we explained:
[I]t is evident that the Louisiana Medical Malpractice Act took cognizance of the need to suspend prescription and fully protects plaintiffs who would otherwise suffer the detrimental effect of liberative prescription. Because the Medical Malpractice Act prohibits the filing of a medical malpractice claim against a qualified health care provider prior to panel review, the act specifies that the filing of a request for review before a panel suspends prescription. La.R.S. 40:1299.47(A)(2)(a). Moreover, as provided by statute, the filing of the *1219 complaint prevents prescription from lapsing during the pendency of the review process and further suspends prescription from the time of filing until ninety-days following notification to the claimant or his attorney of the panel opinion. Id. After reviewing these special provisions, it is clear that the legislature has equitably provided for suspension to aid the plaintiff in the medical malpractice arena who is prevented by law from the outset from filing suit against the qualified health care provider.
* * *
Thus, considering the doctrinal underpinnings for the existence of the rules of suspension, it is evident that there is no need for the general rules of interruption of prescription to combine with suspension to synergistically benefit the plaintiff. [footnote omitted].
Plaintiffs' primarily argue that it would be unfair to apply that LeBreton's holding retroactively to the instant case.[3] In support, they contend that at the time they filed their district court suit in 1997, the weight of the appellate jurisprudence, as exemplified by Hernandez v. Lafayette Bone & Joint Clinic, 467 So.2d 113 (La. App. 3rd Cir.1985) indicated that a district court suit could serve to interrupt prescription in a medical malpractice case. It was not until July 8, 1998 (coincidentally one year exactly after plaintiffs filed their July 8, 1997 lawsuit) that LeBreton explicitly rejected the reasoning of Hernandez.
In Norton v. Crescent City Ice Mfg. Co., 178 La. 135, 150 So. 855 (1933), this court held that as a general rule, a court decision "operates both prospectively and retrospectively, except that it will not be permitted to disturb vested rights." The court restated that principle in Succession of Clivens, 426 So.2d 585, 594 (La.1982), in which it held "[g]enerally, unless a decision specifies otherwise, it is given both retrospective and prospective effect." Nonetheless, Clivens recognized that "states are free to limit the retroactivity of their civil decisional law." Id. (citing Sunburst Oil & Refining Co. v. Great Northern Railway, 91 Mont. 216, 7 P.2d 927 (1932), affirmed, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932)).
In Lovell v. Lovell, 378 So.2d 418 (La. 1979), we set forth the considerations in determining whether a decision should be limited to prospective application only. In Lovell, we addressed the constitutionality of La. Civ.Code art. 160, which at the time imposed alimony obligations on the husband only. After we declared the article unconstitutional, we turned to a discussion of whether our decision should be given retroactive effect. In making this determination, we set forth a three-part inquiry:
In determining whether or not our decision should be given retroactive effect, three factors should be considered: (1) the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) the merits and demerits must be weighed in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation; and (3) the inequity imposed by retroactive application must be weighed. Chevron Oil Company v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).
*1220 Applying this test, we concluded that our decision should not be given retroactive effect:
Upon consideration of each of these factors, we conclude that our decision should not be applied retroactively. Our decision establishes a new principle of law by overruling clear past precedent on which litigants have relied. Innumerable divorced persons, both those paying and receiving alimony, have relied on the constitutionality of art. 160. Loyacano v. Loyacano, [358 So.2d 304 (La.1978)] upholding the constitutionality of this statute, was decided by this court as recently as last year. Moreover, retrospective application would undermine the objectives of art. 160. Finally, substantial inequity would result if prior judgments awarding alimony were declared invalid. It might well require new litigation in each case under the amended article in order to afford continued alimony payments. Also, it would subject divorced wives to suits by their former husbands seeking repayment of alimony paid by husbands under art. 160 prior to its amendment. Where a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the "injustice or hardship" by a holding of nonretroactivity. Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).
Unlike Lovell, nothing in our opinion in LeBreton expressly limited that holding to prospective application only. To the contrary, the fact that we applied our holding in LeBreton to dismiss the case then before us demonstrates we intended for our holding to apply retroactively. Moreover, an analysis of the Lovell factors supports the conclusion that there is no basis not to apply LeBreton retroactively.
The first Lovell factor focuses on whether the decision establishes a new principle of law by overruling "clear past precedent on which litigants have relied." In LeBreton, we acknowledged that the lower courts relied on Hernandez. However, we determined such reliance was misplaced because Hernandez was not correctly reasoned:
Accordingly, we find that the holding of Hernandez v. Lafayette Bone & Joint Clinic, 467 So.2d 113 (La.App. 3 Cir. 1985) is not supportable, since it does not take into consideration the special rules formulated specifically for medical malpractice claims and is, therefore, overruled. Having so found, we further determine that the lower courts in the present case erred as a matter of law in finding that plaintiff's prematurely filed law suit could be simultaneously utilized with the special medical malpractice legislation to defeat the defendants' peremptory exception of prescription.
The second Lovell factor addresses whether retroactive application would further or retard the operation of the rule in question. It is obvious that the purpose behind our holding in LeBreton would be furthered by retroactive application, because LeBreton eliminated a potential abuse under the Hernandez line of reasoning:
We further find that our ruling also serves the judicial system by eliminating an advantage which Hernandez granted to those litigants who failed to follow the proper procedural sequence in medical malpractice litigation. As applied by Hernandez, those litigants who did not first submit their claim to a medical malpractice review panel as provided in La.R.S. 40:1299.47(B)(1)(a)(i) before filing suit in district court benefitted from their error by receiving an additional year after suspension had run within which to file their suit. Under our ruling *1221 herein, this anachronistic benefit exists no longer.
The third factor of the Lovell test addresses the inequity resulting from retroactive application. As noted, LeBreton eliminated the inequity existing under Hernandez by closing a "loophole" which allowed some plaintiffs additional time to file their suit. The equity of placing all litigants on the same footing outweighed any inequity to those plaintiffs whose suits might have prescribed due to their failure to follow proper procedures.
Considering these factors, we see no reason why LeBreton's interpretation of the existing law should not be given both retroactive and prospective effect.[4] Applying LeBreton to the instant case, it is undisputed that plaintiff's claim against Dr. Lujan-Baez is prescribed. Accordingly, we must reverse the judgment of the court of appeal and grant Dr. Lujan-Baez's exception of prescription.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The exception of prescription filed by Dr. Lujan-Baez is sustained, and plaintiffs' suit against Dr. Lujan-Baez is hereby dismissed with prejudice. All costs in this court are assessed against plaintiffs.
JOHNSON, J., concurs.
NOTES
[1] Byrd was not a qualified health care provider; therefore, plaintiffs were not required to submit their claims against this defendant to a medical review panel.
[2] La.Code Civ. P. art. 2163 provides that "[t]he appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record."
[3] Plaintiffs also urges us to revisit the merits of our holding in LeBreton. We decline to do so.
[4] Plaintiffs contend that retroactive application of LeBreton disturbs their pre-existing vested rights to assert their claim. There is clearly no merit to this argument. Unlike a legislative enactment, LeBreton did not make new law, but simply corrected a judicial misinterpretation of the existing law. See Sherman v. Touro Infirmary, 00-1365 (La.App. Cir.10/30/02), 832 So.2d 334, writ denied, 02-2897 (La.2/7/03), 836 So.2d 102 (holding that retroactive application of LeBreton does not divest plaintiffs of any constitutionally protected interest because "LeBreton did not make new law but merely interpreted [an] unchanging statute").