LEON A. CANNIZZARO, JR., Judge.
11 This case involves prescription in a medical malpractice action. The particular issue presented is whether a timely filed suit against a non-qualified health care provider in a court of competent jurisdiction interrupts and/or suspends prescription against a qualified health care provider who is alleged to be a solidary obligor with the non-qualified health care provider. We find that it does not.
FACTS AND PROCEDURAL HISTORY
On March 2, 2001, while a resident of Crescent City Health Care Center, Inc., (“Crescent City”), a nursing home, Ms. Delores James became ill and was admitted to Tenet Health System Memorial Medical Center (Memorial). While a patient at Memorial, Ms. James was transferred to a specialized care facility located within Memorial known as the Rehabilitation Institute of New Orleans (“RINO”).[1] During her stay at Memorial and/or RINO, Ms. James developed decubitus ulcers (bedsores) on her body, and on March 19, 2001, while under the Lcare of Dr. Daniel Rodriquez, she was transferred from RINO back to the nursing home. After returning to Crescent City, she developed several more bedsores, gastrointestinal bleeding, pneumonia and an infection in her right foot. Eventually, sepsis[2] invaded Ms. James’ bloodstream, resulting in her death on October 1, 2001.[3]
On February 20, 2002, the plaintiffs, the brother and sisters of Ms. James, filed wrongful death and survival actions, individually and on behalf of their deceased sister, in the Civil District Court for the Parish of Orleans, naming as defendants Crescent City and RINO. The original petition alleged that the defendants were negligent in treating Ms. James, had breached the standard of care required of nursing homes, and violated the nursing home residents’ bill of rights set forth in La. R.S. 40:2010.8 et seq.
On March 18, 2002, RINO filed an exception of prematurity arguing that it was a qualified health care provider under the Louisiana Medical Malpractice Act (MMA), La. R.S. 40:1299.41 et seq., and, thus, the plaintiffs first had to request a review of their claim by a medical review panel with the Patient’s Compensation Fund Oversight Board pursuant to La. R.S. 40:1299.47(B)(l)(a)(i). On June 4, 2002, on a joint motion of the parties, RINO was dismissed from the suit. On that same day, the plaintiffs amended their original petition, naming Dr. Rodriquez as a |sdefendant and alleging he was jointly liable with Crescent City for the damages resulting from Ms. James’ death.
On August 7, 2003, Dr. Rodriquez filed an exception of prematurity arguing that he was a state health care provider under La. R.S. 40:1299.39 et seq., the Malpractice Liability for State Services Act (MLSSA), and, thus, the plaintiffs had to first request a review of their medical malpractice claim by a state medical review panel with the *77 Division of Administration pursuant to La. R.S. 40:1299.39.1. On October 29, 2003, the plaintiffs filed their request for a review of their complaint by a state medical review panel. Shortly thereafter, the plaintiffs settled and dismissed their claims against Crescent City.
On November 21, 2005, the plaintiffs filed a second supplemental and amending petition naming the State of Louisiana, through the Board of Supervisors of Louisiana State University (LSU) Agricultural and Mechanical College and LSU Medical Center, as a defendant. The plaintiffs alleged that Dr. Rodriquez was an employee of LSU Medical Center when he treated Ms. James at Memorial and Crescent City. They further alleged that LSU Medical Center failed to properly train and supervise its physicians in the care of nursing home patients and that it breached the standard of care owed to Ms. James.
The State and Dr. Rodriquez filed an exception of prescription, arguing that the plaintiffs’ original suit against Dr. Rodriquez was premature and did not interrupt prescription because it was filed before the plaintiffs’ filed their request for a review by a state medical review panel. They also contend that the plaintiffs’ | ¿request for a review by a state medical review panel did not suspend prescription because the request was not filed with the Division of Administration within one year of the date of the alleged malpractice or Ms. James’ death. In opposition, the plaintiffs argued that pursuant to La. C.C. arts. 3462[4] and 2324(C)[5], their timely filed suit against Crescent City interrupted prescription on their medical malpractice claims against Dr. Rodriquez and the State because the three defendants were alleged to be joint tortfeasors.
Following a hearing, the trial court sustained the exception of prescription, finding that the plaintiffs had filed their request for a review by a state medical review panel more than two years after the date of the alleged malpractice and Ms. James’ death. Citing the Louisiana Supreme Court’s decision in LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, the trial court concluded that La. R.S. 40:1299.47(A)(2)(a)[6], the specific statute providing for the suspension of prescription in the context of medical malpractice, applied alone rather than complementary to the more general Louisiana Civil Code articles on prescription.
I ¡ASSIGNMENTS OF ERROR
In their first assignment of error, the plaintiffs argue that the trial court erred in relying on the Louisiana Supreme Court’s decision in LeBreton, supra, to determine that the claims against Dr. Rodriquez and the State had prescribed. They distinguish LeBreton by emphasizing that the plaintiff therein never timely filed a suit *78 against a defendant not covered under the medical malpractice act, who was alleged to be a solidary obligor with the defendant health care provider covered under the act, as was done in the present case. Instead, the plaintiffs contend, the trial court should have relied on this court’s decision in Pickard v. Baugh, 565 So.2d 1102 (La. App. 4th Cir.1990), which held that a plaintiffs timely filed suit against his employer interrupted prescription on the plaintiffs medical malpractice claim against his treating physician even though his request for a medical review panel was filed more than three years after the alleged malpractice because the employer and physician were alleged to be solidary obligors under La. C.C. art. 1799.[7]
In the second assignment of error, the plaintiffs contend the trial court erred in failing to recognize that under Taylor v. Giddens, 618 So.2d 834 (La.1993), the prescriptive period applicable to the plaintiffs’ wrongful death claims is the one-year period found in La. C.C. art. 3492 rather than the one-year period set forth in La. R.S. 9:5628 for medical malpractice claims.
|,LAW AND DISCUSSION Pursuant to La. R.S. 40:1299.39.1(A)(1), all malpractice claims against the state, its agencies, or other persons covered by the MLSSA must be reviewed by a state medical review panel. The prescriptive period for a medical malpractice claim is one year, La. R.S. 9:5628; the prescriptive period for a delictual action is also one year, La. C.C. art. 3492. La. R.S. 40:1299.39.1(B)(l)(a)(i) provides:
No action against the state, its agencies, or a person covered by [the MLSSA], or his insurer, may be commenced in any court before the claimant’s complaint has been presented to a state medical review panel established pursuant to this Section.
La. R.S. 40:1299.39.1(A)(2)(a) provides, in part,
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification ... to the claimant or his attorney of the issuance of the opinion by the state medical review panel, in the case of the state or persons covered by this Part, ...
In LeBreton, the plaintiffs father died on August 20, 1991, while a patient at Pendleton Memorial Hospital in New Orleans. The plaintiff filed a wrongful death claim in the district court on August 18, 1992. Although the plaintiff alleged that her claim did not fall under the MMA because the defendant physicians acted intentionally, she also filed a request for a review of the claim by a medical review panel with the Patient’s Compensation Fund Oversight Board on August 19, 1992. The defendant physicians excepted to this suit on the grounds of prematurity because it was filed prior to the plaintiffs filing of a request for a review by a medical review panel. The trial court sustained the defendants’ exceptions and dismissed the suit without prejudice.
|70n August 12,1996, the medical review panel issued its opinion, finding no medical malpractice on the part of the defendant physicians. Although the medical review panel notified the plaintiffs attorney on August 14, 1996 of its decision, the plaintiff did not re-file her law suit until February 3, 1997, well beyond the ninety-day sus-pensive period provided by La. R.S. 40:1299.47(A)(2)(a). In response, the defendants filed exceptions of prescription *79 alleging the plaintiffs wrongful death claim was prescribed on its face. The trial court overruled the exceptions, finding that because of the interruption caused by the filing of the plaintiffs suit as provided by La. C.C. art. 3462 and its later dismissal without prejudice, the plaintiff had one year after the expiration of the suspensive period set forth in La. 40:1299.47(A)(2)(a) within which to file suit or until August 14, 1997. On review, this Court denied the defendant physicians’ supervisory writ.
The Supreme Court granted the defendant physicians’ writ application to consider whether the trial court erred in applying the general provision on interruption of prescription found in La. C.C. art. 3462 simultaneously with the specific provision on suspension of prescription contained in La. R.S. 40:1299.47(A)(2)(a) of the MMAto defeat the defendants’ exception of prescription.[8] The Court reiterated its decision in Everett v. Goldman, 359 So.2d 1256 (La.1978), stating that a claimant “ ‘must provoke a medical review panel and receive an opinion from it before he can file suit in a court of law.’ ” LeBreton, supra, 97-2221 at p. 8, 714 So.2d at 1230 (citation omitted). The Court held that the filing of a medical malpractice claim with a medical review panel triggered the suspension of prescription specially provided by the MMA, rather than the ^interruption of the liberative prescriptive period provided in the Civil Code. The Court concluded that a medical malpractice plaintiff could not simultaneously take advantage of an interruption of prescription caused by the filing of suit in a court of competent jurisdiction under La. C.C. art. 3462 and a suspension of prescription caused by the subsequent filing of a request for a medical review panel under La. R.S. 40:1299.47(A)(2)(a). Thus, the Court held that the “specific” statute providing for the suspension of prescription found in the medical malpractice act should be applied alone and not with the more general Civil Code article which addresses the interruption of prescription. Id. at 1277.
Applying the LeBreton holding to this ease, the plaintiffs’ medical malpractice suit against Dr. Rodriquez was premature because it was filed prior to their request for a review of their malpractice claims by a state medical review panel. Also, the plaintiffs’ medical malpractice claims against Dr. Rodriquez and the State had prescribed because their request for a state medical review panel was filed with the Division of Administration more than a year from the date of the alleged malpractice and Ms. James’ death.
The fact that the plaintiffs in this case first filed a suit against a defendant not covered by the medical malpractice act alleging solidary liability between that defendant and the defendants covered under the medical malpractice act, as was done in the Pickard case, is of no consequence considering the Supreme Court’s recent decision in Bush v. National Health Care of Leesville, 2005-2477 (La.10/17/06), 939 So.2d 1216.
In Bush, supra, the plaintiffs went to the emergency room at Byrd Regional Hospital in Leesville, Louisiana, on July 8, 1996, where Dr. Lujan-Baez treated their minor son. On July 8, 1997, the plaintiffs filed a medical malpractice suit in |flthe district court against Byrd Regional Hospital and Dr. Lujan-Baez. On September 23, 1997, more than a year after the alleged malpractice, the plaintiffs filed a complaint with the PCF and requested a review by a medical review panel. Dr. Lujan-Baez filed an exception of prematurity in the district court proceedings, contending the suit was premature until *80 the proceedings before the medical review panel were concluded. The plaintiffs voluntarily dismissed their suit against Dr. Lu-jan-Baez without prejudice, but maintained their action against the hospital, which was not a qualified health care provider under either the MMA or MLSSA. After the medical review panel issued its decision on January 10, 2000, the plaintiffs re-filed their suit against Dr. Lujan-Baez in the district court on February 24, 2000. Dr. Lujan-Baez filed an exception of prescription arguing that the suit against her had prescribed because the plaintiffs filed their complaint with the PCF and request for a medical review panel more than one year from the date of the alleged malpractice. The trial court overruled the exception reasoning that the plaintiffs’ initial suit against Byrd Regional Hospital interrupted prescription on the malpractice claim against Dr. Lujan-Baez because she was alleged to be solidarity liable with the hospital. The Third Circuit Court of Appeal upheld the district court.[9]
The Supreme Court granted certiorari[10] , reversed the lower courts and held that its decision in LeBreton applied retroactively to bar the plaintiffs’ 1996 medical malpractice claim against Dr. Lujan-Baez. Although the retroactive application of Le-Breton is not at issue in this case, the facts in Bush are on point with the facts herein. Furthermore, it is clear from the decision in Bush that even if |10a medical malpractice plaintiff initially filed a timely suit in a court of competent jurisdiction against a defendant not qualified under the medical malpractice act, alleging solidary liability between that defendant and a defendant healthcare provider covered by the act, the specific statutory provision providing for the suspension of prescription found in the medical malpractice act is to be applied alone and not with the more general Civil Code article which addresses the interruption of prescription.
Finally, we find no merit to the plaintiffs’ second assignment of error. The Supreme Court in Taylor v. Giddens, supra, found that although a wrongful death action may have its genesis in an act of medical malpractice, it is not controlled by La. R.S. 9:5628, the prescriptive period for medical malpractice, but rather by La. C.C. art. 3492, the one-year liberative period applicable to delictual actions. The Court stated:
The determination that the prescriptive period for wrongful death actions arising from acts of medical malpractice are not within the scope of LSA-R.S. 9:5628, does not alter the affect (sic) that the Medical Malpractice Act, LSA-R.S. 40:1299.41 et seq, has on wrongful death actions. The actions continue to be governed and procedurally controlled by the provisions of the Act.
Taylor v. Giddens, 92-3054 (La.5/24/93), 618 So.2d 834, 841. Thus, the plaintiffs’ wrongful death claims arising from Ms. James’ death as the result of the alleged malpractice of Dr. Rodriquez and the State had to be filed within one year of the date of her death, ie., the plaintiffs had to file their request for a review of their malpractice claims by a state medical review panel on or before October 1, 2002. The plaintiffs filed their complaint and request for a state medical review panel on October 29, 2003, which was more than two years after Ms. James’ death. |nThus, the plaintiffs’ wrongful death and survival actions against Dr. Rodriquez and the State have prescribed.
*81 DECREE
Accordingly, for the reasons stated herein the judgment of the trial court sustaining the exception of prescription in favor of the State of Louisiana and Dr. Daniel Rodriquez is affirmed.
AFFIRMED.

. According to the pleadings filed in the record, RINO was a division of Tenet Health System Memorial Medical Center.

. Sepsis is defined as a toxic condition resulting from the spread of bacteria from a region of infection into the bloodstream.

.The plaintiffs allege in their original petition and appeal brief that Ms. James died on October 1, 2001. The trial court’s judgment, however, states October 15, 2001 as the date of death.

. La. C.C. art. 3462 provides, in part, "[prescription is interrupted when the owner commences action against the possessor, or when the obligee commences action against the ob-ligor, in a court of competent jurisdiction and venue.”

. La. C.C. art. 2324(C) provides, “[i]nterraption of prescription against one joint tortfea-sor is effective against all joint tortfeasors.”

. La. R.S. 40:1299.47, which was at issue in LeBreton, deals with medical malpractice against private health care providers as defined in La. R.S. 40:1299.41. The plaintiffs’ claims in this case, however, allege medical malpractice relating to state services and, thus, fall under La. R.S. 40:1299.39. Nonetheless, this Court previously held that the Supreme Court’s decision in LeBreton was applicable for the purpose of determining whether medical malpractice claims against the State of Louisiana and its agencies were prescribed. See Metropolitan Development Center v. Liner, 2004-0654 (La.App. 4 Cir. 12/8/04), 891 So.2d 62.

. La. C.C. art. 1799 provides, "[t]he interruption of prescription against one solidary obli-gor is effective against all solidary obligors and their heirs.”

. LeBreton v. Rabilo, 97-2221 (La. 11/26/97), 703 So.2d 652.

. Bush v. National Health Care of Leesville, 2005-337 (La.App. 3 Cir. 11/2/05), 923 So.2d 150.

. Bush v. National Health Care of Leesville, 2005-2477 (La.4/24/06), 926 So.2d 528.