JOSEPH SLAUGHTER,
v.
NORTH OAKS MEDICAL CENTER, DR. NELSON LINER, ABC INSURANCE COMPANY.
No. 2009 CA 1808.
Court of Appeals of Louisiana, First Circuit.
March 26, 2010.
Not Designated for Publication
CHARLES D. CHRISTMAS, Amite, LA, and CHRISTINE L. DeSUE Metairie, LA, Counsel for Plaintiff/Appellant, Joseph Slaughter.
RACHEL G. WEBRE, ERNEST P. GEIGER, JR. New Orleans, LA, and MARK CRANE, NICOLE L. JOHNSON, Chicago, IL, Counsel for Defendant/Appellee, C. R. Bard, Inc.
Before: WHIPPLE, HUGHES and WELCH, JJ.
WHIPPLE, J.
Plaintiff, Joseph Slaughter, appeals from a judgment of the district court, dismissing his claims against C.R. Bard, Inc., the manufacturer of an allegedly defective life port device, on the basis of prescription. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On June 8, 2006, Slaughter filed a petition for damages in the Twenty-first Judicial District Court for the Parish of Tangipahoa against North Oaks Medical Center (North Oaks), Dr. Nelson Liner, and ABC Insurance Company. In his petition, Slaughter alleged that he was a patient of and being treated by North Oaks and Dr. Liner on June 11, 2005, for chest pains. Slaughter further averred that, while under the care of North Oaks and Dr. Liner, a life port device had been installed in Slaughter's chest and that, after the installation of the life port, a portion of the life port broke and became lodged in his artery. Slaughter contended that Dr. Liner was negligent in the insertion of the life port and that North Oaks was liable to him for acts of medical negligence.
Thereafter, on July 18, 2006, more than one year after the dates set forth in the petition as to the alleged acts of malpractice, Slaughter filed a petition with the Division of Administration, naming as defendants North Oaks, Dr. Liner, and ABC Insurance Company and seeking to have the Patient's Compensation Fund Oversight Board (the PCF) empanel a medical review panel to review his claim of medical malpractice.
On August 11, 2006, North Oaks filed an exception of prematurity in the district court proceeding, contending that pursuant to the provisions of the Louisiana Medical Malpractice Act (the MMA), LSA-R.S. 40:1299.47 et seq., Slaughter's claim could not be filed in district court until a medical review panel proceeding had been completed. Dr. Liner[1] also filed an exception of prematurity on September 22, 2006, contending that he was a qualified health care provider within the meaning of the MMA and, thus, that Slaughter's suit was premature until the matter had been presented to a medical review panel.[2] By judgment rendered in open court on November 17, 2006, and later signed on January 15, 2009, Slaughter's claims against North Oaks and Dr. Liner were dismissed without prejudice, by the agreement of counsel, on the basis of prematurity.[3]
Subsequently on August 27, 2008, approximately one year and nine months after his claims against North Oaks and Dr. Liner were dismissed without prejudice and more than three years after the occurrence of the facts giving rise to the claim, Slaughter filed an amended petition in the district court proceedings, naming as an additional defendant, C.R. Bard, Inc., the manufacturer of the life port device. C.R. Bard Inc.'s exception of no right of action, filed on the basis that the amended petition contained no allegations of negligence or other misconduct on the part of C.R. Bard, Inc., was maintained, but Slaughter was given thirty days within which to amend his petition to state a claim against C.R. Bard, Inc.
Slaughter then filed a second amended petition on February 9, 2009, alleging that: (1) the life port device manufactured by C.R. Bard, Inc. was implanted into Slaughter on April 28, 2005; and (2) the life port implanted in Slaughter was defective in that portions of the implant failed, breaking from the original unit and becoming lodged in Slaughter's heart.
C.R. Bard, Inc. responded to the second amended petition by filing an exception of prescription, contending that because Slaughter's claims against North Oaks and Dr. Liner were prescribed by operation of LSA-R.S. 9:5628 (and, thus, could not serve to interrupt prescription as to the claims asserted against C.R. Bard, Inc.) and because C.R. Bard, Inc. was not named as a defendant until over three years after the alleged injury, Slaughter's claims against C.R. Bard, Inc. were also prescribed and should be dismissed with prejudice.
In opposition to the exception, Slaughter contended that he had timely filed the medical malpractice negligence claim in district court, which interrupted prescription.[4] Slaughter further averred that when alerted by opposing counsel that North Oaks would want to proceed with a medical review panel instead of moving forward in district court, Slaughter then immediately filed a request for a medical review panel with the PCF, which request was received by the PCF on July 18, 2006, within a day of the defendants being served with the civil suit.[5]
According to Slaughter, prescription remained interrupted by the pending district court suit at the time that the request for a medical review panel was filed. Slaughter argued that because the timely filed district court suit interrupted prescription as to the qualified health care providers, prescription was also interrupted as to any non-qualified defendants that were joint and solidary obligors, i.e., C.R. Bard, Inc. Accordingly, Slaughter asserted that his claim against C.R. Bard, Inc. was timely filed, and the exception of prescription filed by C.R. Bard, Inc. should be denied.
Following a hearing on the exception, the district court held that the lawsuit filed prematurely in the district court against Dr. Liner and North Oaks did not interrupt prescription of a medical malpractice claim and that, unless the complaint requesting review by a medical review panel was filed prior to the one-year prescriptive period, the claim was prescribed. Thus, having found that Slaughter's claims against Dr. Liner and North Oaks were prescribed, the trial court further concluded that C.R. Bard, Inc.'s exception of prescription should be maintained.
From the July 2, 2009 judgment maintaining C.R. Bard, Inc.'s exception of prescription and dismissing Slaughter's claims against it, Slaughter appeals, contending in his sole assignment of error that the district court erred in maintaining C.R. Bard, Inc.'s exception of prescription "due to the fact that defendants were put on notice of the lawsuit within a year of the event."

DISCUSSION
Ordinarily, the party raising the exception of prescription bears the burden of proof at the trial of the peremptory exception. Carter v. Haygood, XXXX-XXXX (La. 1/19/05), 892 So. 2d 1261, 1267. However, when a petition reveals on its face that prescription has run, the plaintiff bears the burden of establishing that the claim has not prescribed. LeBreton v. Rabito, 97-2221 (La. 7/8/98), 714 So. 2d 1226, 1228.
In the instant case, Slaughter's first and second amended petitions, asserting a claim against C.R. Bard, Inc., were filed respectively on August 27, 2008, and February 9, 2009, more than three years after the occurrence of the facts giving rise to the claim. Thus, the amended petitions were prescribed on their face, and Slaughter bore the burden of establishing that his claim against C.R. Bard, Inc. had not prescribed.
On appeal, Slaughter avers that his claim against C.R. Bard, Inc. was timely filed because prescription as to that claim was interrupted by the earlier actions he filed against Dr. Liner and North Oaks. Thus, the first issue presented is whether Slaughter in fact timely filed a medical malpractice claim against Dr. Liner and North Oaks, which then interrupted prescription of his claim against C.R. Bard, Inc., an alleged joint tortfeasor with Dr. Liner and North Oaks.
Actions for medical malpractice against health care providers qualified under the Medical Malpractice Act (the MMA), LSA-R.S. 40:1299.41 et seq., are governed by the MMA and the provisions of LSA-R.S. 9:5628, which set forth the liberative prescription applicable for actions for medical malpractice under Title 40. LeBreton, 714 So. 2d at 1229.
Louisiana Revised Statute 9:5628(A) delineates the time limitations for the filing of actions for medical malpractice in district court as follows:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
(Emphasis added). In sum, the statute provides that suit must be brought within one year from the date of the alleged act, omission, or neglect, or within one year from the date of the discovery of same, but in no event more than three years after the date of the alleged malpractice. See Carter, 892 So. 2d at 1267-1268.
However, regarding the commencement of a claim for medical malpractice against a qualified health care provider, LSA-R.S. 40:1299.47(B)(1)(a)(i) further provides as follows:
No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.
(Emphasis added). Thus, pursuant to LSA-R.S. 40:1299.47(B)(1)(a)(i), a patient must invoke a medical review panel through the PCF and receive an opinion from the panel before he can file suit in a court of law. Borel v. Young, XXXX-XXXX (La. 7/1/078), 989 So. 2d 42, 61 (on rehearing); LeBreton, 714 So. 2d at 1230 (quoting Everett v. Goldman, 359 So. 2d 1256, 1263 (La. 1978)).
If a medical review panel is timely requested, LSA-R.S. 40:1299.47(A)(2)(a) complements LSA-R.S. 40:1299.47(B)(1)(a)(i) by specially providing that "[t]he filing of the request for a review of a claim shall suspend the time within which suit must be instituted ... until ninety days following notification ... to the claimant or his attorney of the issuance of the opinion by the medical review panel." (Emphasis added). Simply stated, the filing with the PCF of a request for review of a medical malpractice claim by a medical review panel triggers the suspension of prescription specially provided by the Medical Malpractice Act, rather than the interruption of the liberative prescription generally provided in the Civil Code. Borel, 989 So. 2d at 61, 67 (on rehearing); LeBreton, 714 So. 2d at 1230.
However, as clearly articulated by the Louisiana Supreme Court, the premature filing of a lawsuit against a qualified health care provider prior to review by the medical review panel is prohibited and does not serve to interrupt prescription of a medical malpractice claim. Bush v. National Health Care of Leesville, 2005-2477 (La. 10/17/06), 939 So. 2d 1216, 1218; Geiger v. State. Department of Health and Hospital, 2001-2206 (La. 4/12/02), 815 So. 2d 80, 85; Washington, 797 So. 2d at 56; LeBreton, 714 So. 2d at 1230. Additionally, the late filing of a request for review of a claim by a medical review panel cannot suspend prescription where prescription has already run. Bush, 939 So. 2d at 1218-1221; Gejger, 815 So. 2d at 85; Washington, 797 So. 2d at 56.
In the instant case, Slaughter does not dispute on appeal that his July 18, 2006 request for review of his claim by a medical review panel was filed with the PCF more than one year after the date of the alleged acts of malpractice by Dr. Liner and North Oaks and more than one year after the discovery thereof.[6] Thus, we must determine whether the prescriptive period set forth in LSA-R.S. 9:5628 had already accrued on July 18, 2006, or whether some other event suspended or interrupted the accrual of prescription.
Although Slaughter argues that the lawsuit he filed against Dr. Liner and North Oaks in the district court within one year of the alleged malpractice interrupted prescription, as set forth above, the district court suit was premature and did not serve to interrupt prescription of his claims against those defendants for medical malpractice. Bush, 939 So. 2d at 1218; Geiger, 815 So. 2d at 85; Washington, 797 So. 2d at 56; LeBreton, 714 So. 2d at 1230. Moreover, the late filing of a request for review of a claim by a medical review panel could not have served to suspend prescription because prescription had already run. Bush, 939 So. 2d at 1218-1221; Geiger, 815 So. 2d at 85; Washington, 797 So. 2d at 56. Accordingly, plaintiffs untimely claim against Dr. Liner and North Oaks likewise could not have served to interrupt prescription of his claim against C.R. Bard, Inc., asserted much later.
While Slaughter states in his appellate brief that "[t]he seminal case" that affects the instant suit is "LeBreton ... and its progeny," he nonetheless contends that the Supreme Court's holding in LeBreton is inapplicable because the facts of LeBreton, and of the subsequent Louisiana Supreme Court decision in Washington, are distinguishable from the facts presented herein. Specifically, he contends that the issues presented in LeBreton and Washington "centered largely around whether the plaintiffs['] claims were grounded in an intentional tort versus an action requiring review by a medical review panel."[7]
At the outset, we note that an action for medical malpractice sounds in negligence and specifically excludes intentional torts. LSA-R.S. 40:1299.41(A)(8) (prior to being renumbered as LSA-R.S. 40:1299.41(A)(13) by Acts 2008, No. 558, § 1); Carter, 892 So. 2d at 1266-1267. Moreover, while the plaintiff in LeBreton alleged in her district court action for wrongful death that the health care providers involved engaged in a "deliberate act of euthanasia" in ordering the cessation of artificial life support for her father at the request of her mother, the plaintiff herself, nonetheless, filed a request with the PCF for a review of the claim by a medical review panel, thereby implicitly raising claims other than that of intentional tort before the PCF. See LeBreton, 714 So. 2d at 1227. Thus, any discussion by the Supreme Court of the MMA in LeBreton necessarily was addressed to claims of medical malpractice, not claims of intentional tort. Indeed, there is nothing in the Supreme Court's opinions in LeBreton or Washington to suggest that the holdings of those cases were meant to apply only to cases involving an intentional tort, cases which clearly would not even be covered by the MMA.
Moreover, we note that in the subsequent cases of Bush and Geiger, the Supreme Court applied its earlier pronouncements in LeBreton to medical malpractice cases involving no allegation of any intentional wrongdoing. Bush, 939 So. 2d at 1218-1221; Geiger, 815 So. 2d at 85. Accordingly, we find no merit to Slaughter's contention that the holdings of LeBreton and its progeny are inapplicable herein.

CONCLUSION
For the above and foregoing reasons, the July 2, 2009 judgment of the district court, dismissing Slaughter's claims against C.R. Bard, Inc., as prescribed, is affirmed. Costs of this appeal are assessed against appellant, Joseph Slaughter.
AFFIRMED.
NOTES
[1] In the exception filed by Dr. Liner, he indicated that he was incorrectly referred to in the plaintiffs petition as "Dr. Nelson Liner," but that his correct name is "Dr. Fred Jefferson Liner, Jr."
[2] Dr. Liner alternatively asserted exceptions of no right of action and no cause of action also on the basis that Slaughter's claim had not been properly presented to a medical review panel.
[3] Notably, on motion by Slaughter, and by judgment subsequently rendered on February 26, 2007, Slaughter's previously dismissed claims against Dr. Liner were dismissed with prejudice.
[4] Slaughter noted, without specific discussion of the holdings of the Court, that in the cases of LeBreton v. Rabito, 97-2221 (La. 7/8/98), 714 So. 2d 1226, and Washington v. Fustok, XXXX-XXXX (La. 9/21/01), 797 So. 2d 56, the Louisiana Supreme Court addressed the issue of prescription in the context of tort actions filed in a district court and medical malpractice claims reviewed by medical review panels. Nonetheless, he contended that those cases were factually distinguishable from this case in that they both involved intentional tort suits filed in district court.
[5] Slaughter also contended that because defendants were put on notice of the claim when served with the district court suit, there was no prejudice to defendants.
[6] While in his original petition Slaughter set forth the date of the alleged malpractice (i.e., the act of and the events surrounding the insertion of the life port device) as June 11, 2005. the original petition together with the two amended petitions set forth that the life device was actually implanted on April 28, 2005, and that during Slaughter's later hospitalization of June 11, 2005, it was discovered that a portion of the life port device had broken off.
[7] In LeBreton, the plaintiff filed both a suit in district court, alleging a "deliberate act of euthanasia," and a request for review by a medical review panel with the PCF within one year from the date of the alleged acts of malpractice. The district court suit was dismissed without prejudice on the basis of prematurity, and the medical review panel thereafter rendered a decision. However, the plaintiff waited five months after notification of the medical review panel decision to file a second suit. LeBreton, 714 So. 2d at 1227.

The defendants filed an exception of prescription in the second suit, alleging that it was prescribed on its face. The trial court denied the exception of prescription, relying on prior Third Circuit jurisprudence that held that the filing of the first suit interrupted prescription. The appellate court denied supervisory writs. LeBreton, 714 So. 2d at 1227.
The Supreme Court reversed the lower courts, holding that medical malpractice cases are governed by special rules set forth in the MMA, including the rule that the filing of a medical review panel request only suspends prescription, and further holding that the general rules of interruption of prescription set forth in the Civil Code were inapplicable to medical malpractice claims. Thus, the Supreme Court held that the premature filing of the original suit did not interrupt prescription and that the filing of the request for a medical review panel served only to suspend prescription, as specially provided by the MMA, from the time of filing until 90 days following notification of the medical review panel opinion. LeBreton, 714 So. 2d at 1230-1231. Accordingly, the Court concluded that the plaintiffs second suit, filed approximately five months after notification of the panel's opinion, was prescribed. LeBreton, 714 So. 2d at 1231.
In Washington, the Supreme Court specifically addressed a situation wherein the plaintiff prematurely filed suit in district court and then filed a request for a medical review panel more than one year from the date of the alleged malpractice. The Court concluded that the premature district court suit did not interrupt prescription and that because the request for a medical review panel was filed more than one year after the alleged malpractice, prescription was never suspended pursuant to LSA-R.S. 40:1299.47(A)(2)(a). Accordingly, the Court maintained the defendant's exception of prescription. Although Slaughter asserts on appeal that Washington involved an intentional tort, the Court's opinion in Washington gives no indication that its holding was somehow based on the fact that an intentional tort was involved. Washington, 797 So. 2d at 56.