MAX N. TOBIAS, JR., Judge.
 

 |tNathaniel Dowl, Jr., appeals the trial court’s judgment dismissing with prejudice
 
 *600
 
 his suit seeking court approval of a 2002 settlement of a medical malpractice claim and demand for payment from the Louisiana Patient’s Compensation Fund on exceptions of lack of subject matter jurisdiction,
 
 res judicata,
 
 prescription, and no cause of action, and further imposing conditional sanctions. He also appeals the denial of his motion for new trial. The Louisiana Patient’s Compensation Fund and The Louisiana Patient’s Compensation Fund Oversight Board (collectively, the “PCF”) have answered the appeal seeking modification of the trial court judgment and damages for frivolous appeal.
 

 For the reasons that follow, we affirm the trial court’s dismissal of the appellant’s case with prejudice on the exception of no cause of action, its imposition of sanctions, and its denial of the motion for new trial. We further grant the PCF’s request for modification of the trial court judgment and award damages for frivolous appeal.
 

 Nathaniel Dowl, Sr. died in April 2000 allegedly as a result of the negligent home care provided by Redi Care Home Health Association (“Redi Care”) and Dr. David Bass (“Dr. Bass”), a Veterans Administration Medical Center (“VA”) 12physician providing home health care assistance. Following his death, the decedent’s son, Nathaniel Dowl, Jr. (“Dowl”), appellant herein, filed two lawsuits.
 

 In the first suit filed in 2001, Dowl sued Redi Care asserting negligence claims related to his father’s demise. Dowl filed a supplemental and amending petition adding Redi Care’s insurer, Scottsdale Insurance Company (“Scottsdale”) as a defendant. At no time, in his original or supplemental and amending petitions, did Dowl aver that Redi Care was a qualified health care provider under Louisiana’s Medical Malpractice Act, La. R.S. 40:1299.41,
 
 et seq.
 
 (the “MMA”), nor did he name the VA or any VA physician as a defendant in the case.
 
 [1]
 

 After Redi Care sought debtor relief under the U.S. Bankruptcy Code, which stayed the proceedings against them, Dowl and Scottsdale agreed to settle the case. On 23 September 2002, Dowl executed a General Release and Indemnity Agreement, whereby in consideration of $100,000.00, he settled all rights he possessed against Scottsdale and Redi Care. In addition, except for retaining any rights he might have solely against the VA, Dowl released all other parties, known or unknown, and all claims he might have arising out of the alleged negligence related to his father’s death. Specifically, the Agreement provides, in pertinent part:
 

 That I, Nathaniel Dowl, Jr., for the sole consideration of the sum of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS, ... in hand paid by Scottsdale Insurance Company, for itself and for and on behalf of its insured, Redi Care Home Health Association, to me ..., the receipt whereof is hereby acknowledged, in consideration of which I do hereby release and forever discharge Redi RCare Home Health Association and Scottsdale Insurance Company, their officers, directors, agents, employees, subsidiaries, assignees, successors, adjusters, investigators, attorneys, and any and all other named or unnamed parties or insured, and all other persons or entities without any limitation whatsoever, excepting the claims reserved hereinafter against the Department of Veterans Affairs, of and from any and all claims or
 
 *601
 
 demands of whatsoever nature, for or because of any matter or thing done, omitted or suffered to be done by the Released Parties prior to including the date hereof, and particularly on account of any and all claims which I have or may have, or which Nathaniel Dowl, Sr. had, or may have had for bodily injury, wrongful death, pain, suffering, and all general and special damages, all loss, expense, medical expenses, attorney’s fees, penalties, costs, and any and all other damages of whatsoever kind or nature arising from acts or omissions of Released Parties or any of them during the course of home health or other medical services to Nathaniel Dowl, Sr. from and after December 1, 1999, including particularly, but exclusively, negligence or alleged negligence in the prevention, care or treatment of decubitus ulcers, and other medical conditions which allegedly resulted in Nathaniel Dowl, Sr.’s death on April 23, 2000.
 

 [[Image here]]
 

 The aforesaid payments ... are received in full compromise and settlement of any and all claims which I have or may have, individually, or in my capacity as Administrator of the Estate of Nathaniel Dowl, Sr., asserted or which might have been asserted in the matter entitled: “Nathaniel Dowl, Jr., individually, and as Administrator of the
 
 Succession of Nathaniel Dowl, Sr. v. Redi Care Home Health Association,
 
 d/b/a Redi Care/Primary Medical Group and The XYZ Insurance Company,” docket number 2001-6899 on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, and authorize and instruct my counsel of record to file a motion dismissing said suit with prejudice, each party to bear its own costs. [Emphasis supplied.]
 

 I.,On the same day the settlement agreement was executed, the district court signed and issued a Final Order of Dismissal stating that “all claims asserted herein by plaintiff, Nathaniel Dowl, Jr., individually and as Administrator of the Succession of Nathaniel Dowl, Sr ... be and they are hereby dismissed, with prejudice ...”
 
 [2]
 

 Nearly four years after his father’s death, and over fifteen months after executing the release and the dismissal of his first lawsuit with prejudice, Dowl, appearing
 
 pro se,
 
 filed a second action seeking judicial approval of the original 2002 settlement and demanding payment from the PCF. The petition asserted claims against Scottsdale, the VA, and the PCF. On the same day, Dowl amended his petition, adding Dr. David Bass, the alleged treating physician from the VA, as a defendant. No allegations of liability were alleged on the part of Dr. Bass. In addition, Dowl filed a pauper application, that was granted. On Dowl’s motion, the 2004 action was consolidated with the original 2001 suit.
 

 At the time Dowl filed his 2004 action, his former claims against Redi Care and Scottsdale had been compromised in full by the release executed by the parties and the order of dismissal signed by the district court. Scottsdale and the PCF filed numerous exceptions, including an exception of
 
 res judicata,
 
 to the 2004 action. At the hearing on the exceptions, the trial court determined that the case did not involve a MMA qualified health care provider and, consequently, Dowl had no claim against the PCF. Having determined the MMA did not apply, the trial court
 
 *602
 
 further held the settlement of the 2001 suit did not require court approval. Accordingly, the trial court granted the exceptions of
 
 res judicata
 
 filed by |sScottsdale and the PCF, and declared the remaining issues moot. Due to his $100,000 settlement, the trial court also revoked Dowl’s pauper status.
 

 Following the hearing on the exceptions, but prior to the signing of the judgment, Dowl filed a motion to reopen testimony, which the court treated as a motion for new trial.
 
 [3]
 
 The court denied the motion stating that Dowl failed to present any new evidence or show that the judgment was contrary to the law or evidence.
 
 [4]
 
 Following Dowl’s appeal of the judgment,
 
 [5]
 
 this Court affirmed.
 
 Dowl v. Redi Care Home Health Association,
 
 04-1182 (La.App. 4 Cir. 4/6/05), 917 So.2d 434. Dowl’s subsequent application for review to the Louisiana Supreme Court was denied on 25 November 2005, at which time the judgment became final and definitive.
 
 Dowl v. Redi Care Home Health Association,
 
 05-1187 (La.11/28/05), 916 So.2d 146.
 

 In August 2008, Dowl filed a second “Petition for Court Approval of the Settlement of a Medical Malpractice Claim and Claimant Demand for Payment of Damages from the Patient’s Compensation Fund,” seeking approval of the same $100,000 settlement confected with Redi Care and Scottsdale in 2002, which he contends purportedly settled the liability of Redi Care and its employees, including a Dr. Joseph Braud. Dowl avers the PCF is liable for additional funds pursuant to the MMA for negligent acts resulting in his father’s death. According to Dowl, the |,;PCF is liable because Dr. Braud was a qualified health care provider in 2000 when the negligent acts occurred.
 

 The PCF filed an objection to Dowl’s second petition for court approval of the 2002 settlement agreement, in addition to exceptions of lack of subject matter jurisdiction,
 
 res judicata,
 
 prescription and no cause of action. The PCF also moved for La. C.C.P. art. 863B sanctions against Dowl for filing claims against the PCF, because the appellate courts had declared his claims to be unfounded. Additionally, without notice to the PCF, Dowl filed another affidavit seeking pauper status, thereby reviving his previously revoked pauper status. At a hearing held on 12 December 2008, the pauper order was rescinded. Thereafter, following a subsequent hearing on 30 January 2009, the trial court rendered a judgment sustaining the PCF’s exceptions of lack of subject matter jurisdiction,
 
 res judicata,
 
 prescription, and no cause of action, dismissing all claims of Dowl against the PCF with prejudice at Dowl’s cost. Additionally, the court granted the PCF’s request for sanctions, assessing $1,000 against Dowl, made payable only in the event Dowl filed any future motions or pleadings or otherwise pursued his claims against the PCF. Dowl filed a motion for new trial that was denied.
 

 
 *603
 
 Dowl devolutively appealed the trial court’s judgment dismissing his case setting forth four assignments of error. He alleges the trial court erred by: (1) allowing the PCF to raise exceptions; (2) sustaining the PCF’s exceptions of subject matter jurisdiction,
 
 res judicata,
 
 prescription, and no cause of action and the PCF’s request for sanctions; (3) failing to find Dowl’s petition for court approval of a settlement was unopposed; and (4) refusing to grant Dowl’s motion for new trial.
 

 _JjThe PCF answered Dowl’s appeal seeking to have the trial court’s 30 January 2009 judgment modified and/or revised to: (1) recognize the $1,000 sanctions award against Dowl as collectible based on Dowl’s continued pursuit of his claims against the PCF, and (2) order Dowl to pay court costs incurred by him and by the PCF in the trial court in accordance with La. C.C.P. arts. 5186 and 5188. The PCF further seeks an award of damages, including attorney’s fees and costs, for frivolous appeal.
 

 In Dowl’s first assignment of error, he contends that pursuant to the MMA, the PCF is without authority, whether the health care provider is qualified or not, to raise exceptions concerning the court approval of a settlement. This assignment is without merit.
 

 When a settlement is governed by the MMA, the PCF cannot raise objections to a petition for approval of a settlement after the liability of a qualified health care provider is statutorily admitted by payment of $100,000.
 
 Tucker v. Lain,
 
 98-2273, pp. 12-13 (La.App. 4 Cir. 9/5/01), 798 So.2d 1041, 1048-1049;
 
 Reed v. St Charles General Hospital,
 
 08-0430, 08-0431, 08-0570, 08-0573 (La.App. 4 Cir. 5/6/09), 11 So.3d 1138;
 
 Harrison v. Smith,
 
 02-477, pp. 8-9 (La.App. 5 Cir. 11/26/02), 832 So.2d 1064, 1069-1070. However, the MMA permits the PCF to assert exceptions under certain circumstances. Specifically, La. R.S. 40:1299.44 D(2)(b)(x) provides that the PCF shall be responsible and have full authority under the law for the defense of the fund and to specifically “[d]efend the fund from all claims due wholly or in part to the negligence of liability of anyone other than a qualified health care provider regardless of whether a qualified health care provider has settled and paid its statutory maximum or has been adjudged liable or negligent.” Additionally, La. R.S. 40.1299.44 C(3) provides that “[t]he | sboard and the insurer of the health care provider or the self-insured health care provider as the case may be, may file written objections to the payment of the amount demanded.” Thus, the rule prohibiting the PCF from filing exceptions and/or objections does not apply in cases where the settlement does not involve the PCF and a settlement does not involve a qualified health care provider under the MMA.
 

 In the instant case, no dispute exists that the 2002 settlement agreement does not involve the PCF. Thus, in order to determine whether the trial court properly ruled that the PCF had authority to raise the exceptions to Dowl’s second petition for approval of the settlement, we must determine whether the settlement at issue is governed by the MMA. For the reasons that follow, we find the settlement is not governed by the MMA and that the trial court properly allowed the PCF to raise exceptions to Dowl’s second petition for approval of the settlement.
 

 At the outset, we note that in
 
 Doivl v. Redi Care Home Health Ass’n,
 
 04-1182 (La.App. 4 Cir. 4/6/05), 917 So.2d 434, this court previously determined that the 2002 settlement agreement entered into between Dowl and Scottsdale, reserving Dowl’s rights against the VA, was not an agreement governed by the MMA requiring court approval because it was not a
 
 *604
 
 settlement that involved a MMA qualified health care provider.
 
 Id.,
 
 04-1182, pp. 9-10, 917 So.2d at 442. Specifically, we determined that Redi Care was not a MMA qualified health care provider because it failed to comply with the requirements to become qualified. Additionally, citing
 
 Johns v. Agrawal,
 
 00-0499, 99-0500, p. 7 (La.App. 4 Cir. 11/17/99), 748 So.2d 514, 519, we held the VA does not qualify as a qualified health care provider under the MMA.
 
 See Dowl,
 
 04-1182, p. 8, 917 So.2d at 440. These determinations became final and definitive when the Supreme Court denied |gDowl’s application for supervisory writs.
 
 Dowl v. Redi Care Home Health Ass’n,
 
 05-1187 (La.11/28/05), 916 So.2d 146. Accordingly, we hold these findings are
 
 res judicata
 
 and that our prior determination that the 2002 settlement agreement is not governed by the MMA is conclusive.
 
 See
 
 La. R.S. 13:4231(3).
 
 [6]
 

 We further find that Dowl’s assertions in various filed pleadings that Dr. Braud was a MMA qualified health care provider at the time of the alleged negligence does not operate to somehow now bring the 2002 settlement agreement within the purview of the MMA.
 
 [7]
 
 The record is devoid of any evidence establishing Dr. Braud ever medically treated Dowl’s father or, even assuming he did treat the decedent, that Dr. Braud was a MMA qualified health care provider in 2000 at the time of the alleged negligent treatment and the decedent’s subsequent death. At no time did Dowl file a petition for medical review against Dr. Braud in connection with his father’s death as required by La. R.S. 40:1299.47 A(l)(a), which provides that “[a]ll malpractice claims against health care providers covered | inby this Part ... shall be reviewed by a medical review panel.”
 
 [8]
 
 If, as Dowl contends, but which the record does not support, that Dr. Braud was a MMA qualified health care provider, Dowl was obligated to seek a medical review panel under La. R.S. 40:1299.47; pursuant to La. R.S. 9:5628,
 
 [9]
 
 he was required
 
 *605
 
 to request a review of the malpractice claim before a medical review panel within one year from the date of his father’s death in April 2000.
 
 [10]
 

 See Carter v. Ochsner Clinic Foundation,
 
 07-889, p. 6 (La.App. 5 Cir. 3/11/08), 978 So.2d 562, 565 (“in a malpractice case in which the victim of the alleged malpractice dies, the damage resulting from the alleged malpractice is readily apparent. Thus, in a malpractice action for wrongful death, the prescriptive period begins running on the date of the malpractice victim’s death since that is the date the claimants are injured.”)
 

 In summary, all malpractice claims against a MMA qualified health care provider must be reviewed by a medical review panel. La. R.S. 40:1299.47 A(l)(a). The procedure is initiated by filing a request for review with the Louisiana Division of Administration, which forwards the request to the PCF. La. R.S. 40:1299.47 A. The MMA prohibits the filing of a medical malpractice action against a MMA qualified health care provider pri- or to presenting the complaint to a medical review panel. La. R.S. 40:1299.47 B(l)(a)(i); see
 
 also LeBreton v. Rabito,
 
 97-2221, p. 8 (La.7/8/98), 714 So.2d 1226, 1230. Dowl’s | ninitial filing of the wrongful death action in 2001 against Redi Care, a non MMA qualified health care provider (wherein Dr. Braud was not named as a party defendant), did not interrupt the one-year prescriptive period within which Dowl was required to request a review of the alleged malpractice claim against Dr. Braud as a MMA qualified health care provider and solidary obligor. Although the filing of a suit against a party suspends the prescriptive period against solidary ob-ligors under the general law of prescription of delictual claims, the one-year prescriptive period for claims against Dr. Braud could only be interrupted by filing a request for review of the malpractice claim under the provisions of the MMA, which Dowl has never done.
 
 See LeBreton, supra; Mitchell v. Rehabilitation Institute of New Orleans, Inc.,
 
 06-0910, pp. 8-9 (La.App. 4 Cir. 2/14/07), 953 So.2d 75, 79-80.
 
 [11]
 

 In short, some seven-and-a-half years after his father’s death, and five years after settling all claims related to that death and releasing all parties potentially liable for causing that death, Dowl is now trying to establish Dr. Braud’s qualified health care provider status by implying
 
 *606
 
 that he was somehow a party to the prior settlement agreement because he was an employee of Redi Care (a named party to |12the Agreement).
 
 [12]
 
 For the reasons outlined above, Dowl’s efforts come too late, and any claim he may have had against Dr. Braud prescribed one year from the date of his father's death. Additionally, we find that Dowl has failed to establish that Dr. Braud was a MMA qualified health care provider — either before, at the time of, or after — his father’s death, or that he was a party to the 2002 settlement agreement entered into between Dowl and Scottsdale. Accordingly, any claim Dowl may have had against Dr. Braud was released at the time Dowl executed the settlement agreement. Finally, we find that contrary to Dowl’s assertions, he has failed to establish that the settlement of his claims relating to the death of his father was with a MMA qualified health care provider under the MMA or that he has a valid claim against the PCF for additional funds pursuant to the MMA.
 

 As the settlement agreement at issue herein does not involve the PCF and is not a settlement under the MMA, the trial court properly allowed the PCF to raise exceptions to Dowl’s second petition for approval of the settlement. Accordingly, Dowl’s first assignment of error is without merit.
 

 Dowl next contends the trial court erred in sustaining the PCF’s exceptions of subject matter jurisdiction,
 
 res judicata,
 
 prescription, and no cause of action, and the PCF’s request for sanctions. From the standpoint of purely logical application of basic legal principles of Louisiana law, discussed above, the trial court’s ruling is well considered; however, our choice is to dispose of Dowl’s appeal by affirming the trial court’s judgment granting the PCF’s exception of | 1sno cause of action and pre-termitting a discussion of the exceptions of subject matter jurisdiction,
 
 res judicata
 
 and prescription.
 
 [13]
 

 In order for courts to entertain an action, there must be a justiciable controversy at issue.
 
 Superior Oil Co. v. Reily,
 
 284 La. 621, 629, 100 So.2d 888, 891 (La.1958);
 
 Gibson v. State,
 
 03-1112, p. 4 (La.App. 5 Cir. 2/10/04), 866 So.2d 375, 378. In the instant case, the matter presented to the court consists of a pleading filed by Dowl in 2008 captioned, “Petition for Court Approval of the Settlement of a Medical Malpractice Claim and Claimant’s Demand for Payment of Damages from the Patient’s Compensation Fund.” We are of the opinion that Dowl’s petition does not create a justiciable controversy. Dowl has failed to show any justiciable controversy because he has failed to establish that Dr.
 
 *607
 
 Braud was a MMA qualified health care provider at the time of the alleged negligence or that he is otherwise entitled to any additional monies from the PCF in connection with the 2000 death of his father. Additionally, there is absolutely no evidence in the record substantiating Dowl’s contention that the 2002 settlement agreement between non-qualified health care providers and himself requires court approval. By sustaining the PCF’s exception of no cause of action, the district court made the determination that it did not. We agree and affirm.
 

 Dowl avers the trial court erred in imposing sanctions against him on the basis that the PCF intentionally misconstrued the facts and law in this case. Dowl 114further contends this court should sanction the PCF “for their action.” We disagree on both counts.
 

 The manifest error or clearly wrong standard applies to our review of the trial court’s decision to impose sanctions.
 
 In re Succession of Smith Watts,
 
 04-1152, 04-1153, p. 7 (La.App. 4 Cir. 3/23/05), 901 So.2d 450, 455. The trial court has great discretion in deciding whether to impose sanctions; its determination to impose sanctions will not be reversed unless it is manifestly erroneous or clearly wrong.
 
 Bonilla v. Commodore Cruise Lines Ltd.,
 
 02-2182, pp. 6-7 (La.App. 4 Cir. 4/2/03), 844 So.2d 1025, 1029. Considering the record before us, which is devoid of any evidence suggesting that the PCF misconstrued facts or law in this case, we do not find that the trial court’s decision to impose sanctions against Dowl was manifestly erroneous or clearly wrong.
 

 On the assumption that Dowl’s suggestion in his brief on appeal that “this Court should render sanctions against the PCF for their action” is actually a request for sanctions against the PCF, the request is denied. Dowl did not seek sanctions in the trial court. We cannot now address on appeal a request for sanctions that was never properly raised in the trial court.
 
 McDonald Enterprises, Inc. v. Age,
 
 00-1938, p. 5 (La.App. 1 Cir. 11/9/01), 818 So.2d 70, 72.
 

 In his third assignment of error, Dowl contends that his petition for approval of the settlement was unopposed because the PCF’s objections were untimely. The record indicates that while Dowl filed a memorandum in response to the PCF’s objections in the trial court, he did not object to the timeliness of the PCF’s filing of objections to his petition. Because Dowl failed to object below, the timeliness of the PCF’s objections will not be considered for the first time on appeal. Rule 1-3, Uniform Rules of Louisiana Courts of Appeal.
 

 |1BIn his last assignment of error, Dowl argues the trial court erred in refusing to grant him a new trial on the basis that the trial court ruling is contrary to law. The trial court has wide discretion when deciding whether to grant a new trial. La. C.C.P. art. 1973. Despite the trial court’s wide discretion, we review the denial applying the abuse of discretion standard.
 
 Dowl,
 
 04-1182, p. 7, 917 So.2d at 440. A motion for new trial may be denied in the absence of a clear showing of facts or law reasonably calculated to change the outcome or reasonably believed to have denied the applicant a fair trial.
 
 Williamson v. Haynes Best Western of Alexandria, Inc.,
 
 02-1076, p. 4 (La.App. 4 Cir. 1/21/04), 865 So.2d 224, 227.
 

 Dowl requested a new trial on the basis that the judgment was “contrary to the law and evidence,” yet presented nothing new for the court to consider which would have warranted a new trial. His motion and memorandum merely reiterated the issues previously presented, considered,
 
 *608
 
 and decided by the trial court. Specifically, Dowl presented no new evidence demonstrating that he settled any claim with a MMA qualified health care provider or that he has a right to assert a claim against the PCF. Having reviewed the trial court’s determination within the abuse of discretion standard, and for all of the reasons set forth previously herein, we affirm the trial court’s decision to deny Dowl’s motion for new trial.
 

 The PCF answered Dowl’s appeal requesting a modification of the district court’s 30 January 2009 judgment, which states:
 

 Sanctions in the amount of $1,000.00 are hereby assessed against plaintiff, Nathaniel Dowl, Jr., with said sanctions to be collectible by defendants only in the event that plaintiff, Nathaniel Dowl, Jr., files any further motions or pleadings in this matter or otherwise continues to pursue his claims against the defendants.
 

 11fiThe PCF asks this court to modify the lower court judgment to recognize that the $1,000 sanction award against Dowl is now collectible as a result of his continuing course of action against the PCF by filing a motion for new trial and by appealing the dismissal of his case. Having found sufficient cause to affirm the trial court’s imposition of sanctions against Dowl as noted above, we grant the PCF’s request for modification of the 30 January 2009 judgment, and order Dowl to pay the $1,000 within sixty days of the date of finality of this judgment.
 

 The PCF further requests sanctions for frivolous appeal pursuant to La. C.C.P. art. 2164
 
 [14]
 
 and Rule 2-19 of the Uniform Rules of Louisiana Courts of Appeal.
 
 [15]
 
 After thoroughly reviewing the record, we find merit to the PCF’s request.
 

 Appeals are generally favored and an appellate court is thus restrained from granting damages for frivolous appeals because of the possible negative effect it may have on the appellate process.
 
 Winston v. Flamingo Casino,
 
 99-0209, pp. 12-13 (La.App. 4 Cir. 9/22/99), 746 So.2d 622, 629. An appeal will be deemed frivolous if it does not present a substantial legal question or if it is obvious either that it was taken solely for delay or that appealing counsel (party) does not sincerely believe in the view of law that he advocates. Price
 
 v. City of New Orleans,
 
 95-1851, p. 15 (La.App. 4 Cir. 3/27/96), 672 So.2d 1045, 1052-53. In this case, we are mindful of Dowl’s status as a
 
 pro se
 
 litigant and that a
 
 pro se
 
 plaintiff should be given more latitude than plaintiffs represented by counsel 117because they lack formal training in the law.
 
 See Bankston v. Alexandria Neurosurgical Clinic,
 
 94-693, p. 4 (La.App. 3 Cir. 12/7/94), 659 So.2d 507, 510-511 (“Filing
 
 pro se
 
 offers a party neither an impenetrable shield nor a license to harass others, clog the judicial machinery with meritless litigation, or abuse already overloaded court dockets.”).
 

 It is clear that no serious legal issue presented by Dowl in this appeal that has not previously been determined by this court in this case exists. We previously
 
 *609
 
 ruled that the settlement agreement, because it did not involve a MMA qualified health care provider, did not require court approval and that Dowl had no claim for additional money from the PCF for the death of his father. The trial court thoroughly explained to Dowl that, in settling the case and releasing all claims and all parties from liability arising out of his father’s death, including any claim he may have had against Dr. Braud, he is not entitled to any additional monies. Dowl was alerted by the district court as to the frivolous nature of his alleged claims against the PCF when the trial court awarded sanctions against him to be collectible if he persisted in pursuing his baseless claims. Nonetheless, Dowl proceeded with a motion for new trial and the instant appeal. And on appeal, Dowl presents no substantial legal issue; in fact, he does not even present a judiciable controversy to the court.
 

 The attorney’s fee which an appellee must pay to defend a frivolous appeal has been held to be an element of damages.
 
 State Farm Mut. Auto. Ins. Co. v. Callahan,
 
 571 So.2d 852, 855 (La.App. 3 Cir.1990). Consequently, we find that 11S$1,500.00 for damages in the form of attorney’s fees for the defense of this frivolous appeal should be awarded to the PCF and is assessed against Dowl.
 

 Based on the foregoing, we affirm the trial court’s dismissal of Dowl’s petition for court approval of the settlement agreement on an exception of no cause of action and affirm its imposition of $1,000.00 in sanctions against Dowl, which we hold is now collectible by the PCF. We also find that Dowl has filed a frivolous appeal and, therefore, render judgment in favor of defendants, the Louisiana Patients’ Compensation Fund and the Louisiana Patient’s Compensation Fund Oversight Board, and against Dowl for $1,500.00 in damages. All costs of these proceedings are assessed against Dowl.
 

 AFFIRMED; DAMAGES FOR FRIVOLOUS APPEAL IMPOSED.
 

 [1]
 

 . Though Dowl did not name the VA or any VA physician in his suit, the malpractice petition did allege that, because of the substand-arc! care of Redi Care, bis father “had to be removed from his home to be admitted at The Veterans Administration Hospital.”
 

 [2]
 

 . Immediately following the settlement, Dowl fired his attorney. It appears from the record that he has represented himself and appeared
 
 pro se
 
 in all proceedings since that time.
 

 [3]
 

 . Dowl also filed a Motion to Annul the Judgment because it was not a La. C.C.P. art. 2592 summary proceeding. Also, prior to the hearing on the motion for new trial, the judge granted Dowl’s motion for devolutive appeal.
 

 [4]
 

 . The court also stated that it lacked jurisdiction to rule on any alleged medical malpractice claims against Dr. Bass, who was employed by the VA at the time of the alleged negligence, because any alleged claim against him was not covered by the MMA.
 

 [5]
 

 .The motion and order for appeal were premature because, at the time the motion was granted, no written judgment had been signed denying Dowl’s motion for new trial. Pursuant to La. C.C.P. art. 2087 D, the defect was cured, as a judgment following the hearing was subsequently signed.
 

 [6]
 

 . La. R.S. 13:4231 provides:
 

 Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
 

 (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the same transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
 

 (2) If the judgment is in favor of the defendant, all cause of action existing at the time of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
 

 (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
 

 [7]
 

 . It appears that Dowl posits that Dr. Braud was a MMA qualified health care provider and an employee of Redi Care at the time he negligently treated Dowl's father, and that because Dowl settled his claims against Redi Care for $100,000, and Dr. Braud was a qualified health care provider under the MMA at the time he negligently treated Dowl’s father, as a Redi Care employee, the $100,000 payment by Scottsdale on behalf of Redi Care was an admission of Dr. Braud’s liability, thereby triggering the liability of the PCF under the MMC. The record does not support this position. Moreover, the record is devoid of evidence that Dr. Braud was ever made a defendant in any of these proceedings or that he was a party to any settlement agreement in connection with the death of Dowl's father.
 

 [8]
 

 .
 
 See also
 
 La. R.S. 40:1299.47 B(l)(a)(i) which requires that "[n]o action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.”
 

 [9]
 

 . La. R.S. 9:5628 controls the prescriptive period for medical malpractice actions stating that an action for damages against a health
 
 *605
 
 care provider must be brought within one year of the date of discovery of the alleged act and in any event witilin three years of the date of the alleged act.
 

 [10]
 

 . At the veiy latest, the prescriptive period within which Dowl had to request a medical review panel would have be one year from the date of Dowl’s father's death.
 

 [11]
 

 . Even if we were to assume Dr. Braud was a MMA qualified health care provider and that he negligently treated Dowl's father, any claim Dowl may have had against Dr. Braud would have prescribed one year from Dowl's father's death. Aside from prescription, the doctrine of
 
 res judicata
 
 required Dowl to bring all actions against parties, which would include Dr. Braud, for the negligent death of his father in his 2001 lawsuit.
 
 See
 
 La. C.C.P. art. 425
 
 A,
 
 which provides that “[al party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation.” Additionally, pursuant to La. R.S. 13:4231(1), a final judgment that favors the plaintiff is conclusive as "to all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation.” Pursuant to La. C.C. art. 3080, "Ia] compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised.” Accordingly, the settlement agreement between Dowl and Scottsdale has the same preclusive effective as a judgment. Applying these legal principles to this case, any claim Dowl might have against Dr. Braud or the PCF for additional settlement monies is barred by the doctrine of
 
 res judicata.
 

 [12]
 

 . Dr. Joseph Braud was clearly not a named party to the settlement agreement for which Dowl seeks court approval. The plain language of the 2002 settlement agreement states that it is between Nathaniel Dowl, Jr. and “Scottsdale Insurance Company for itself and for and on behalf of its insured. Redi Care Home Health Association.” Dr. Braud's name is not mentioned anywhere in tire settlement document.
 

 [13]
 

 . We have previously indicated that any claim Dowl may have had against Dr. Braud, as an alleged qualified health care provider (which would have potentially obligated the PCF for the payment of additional funds under the MMA), are barred by the doctrine of
 
 res judicata
 
 and/or are prescribed for his failure to petition for a medical review of his claim in accord with the MMA within one year from the date of his father's death. We further note that until such time as Dowl has been through the medical review process before the PCF, the trial court was without subject matter jurisdiction except for purposes of making the determination as to whether Dowl properly proceeded through the medical review process; otherwise, any malpractice claim is premature and the court lacks jurisdiction.
 
 See LeBreton
 
 v.
 
 Rabito, supra.
 

 [14]
 

 . La. C.C.P. art 2164 states:
 

 The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
 

 [15]
 

 . Uniform Rules, Courts of Appeal, Rule 2-19 provides that ''[tjhe court may award damages for frivolous appeal in civil cases as provided by law.”